JAMES CREAMER, Appellant, *v.* CHARLES M. MCCUNE ET AL., Respondents.

### April 15, 1879.

1. The reservation by the owner of "a strip of land one foot in width along the east and south boundaries of a certain lot, until the owners of the lot shall give ten feet along said boundaries for an alley," does not imply a dedication of the strip of ground to public use before fulfilment of the condition.

2. That the computation of the amount due against the property named in a special tax-bill is slightly erroneous, is not necessarily fatal to a recovery on the bill.

APPEAL from St. Louis Circuit Court.
*Reversed and remanded.*

D'ARCY & NAGLE, for appellant: The judgment is erroneous, — (1.) Because the agreed statement does not show, or tend to show that the strip referred to did not belong to the city ; and the burden was on defendants to show this. — *Seibert* v. *Allen*, 61 Mo. 482 ; *Ess* v. *Bouton et al.*, 64 Mo. 106 ; *Grimm* v. *Schickle*, 4 Mo. App. 586 ; *Schultze* v. *De Menil et al.*, 4 Mo. App. 595. (2.) Because the agreed statement shows that if the legal title to the strip referred to is not in the city, yet the Gamble heirs could neither bring ejectment nor trespass against the city for its action ; and said strip therefore belongs to the city, in every sense that is material in the present case. — *Baker* v. *Chicago, Rock Island & Pacific R. Co.*, 57 Mo. 265 ; *Austin* v. *Loring*, 63 Mo. 19 ; *Sommer* v. *Pacific R. Co. et al.*, 4 Mo. App. 586.

HOLLIDAY & TATUM, for respondents.

LEWIS, P. J., delivered the opinion of the court.

This is a suit on a special tax-bill for the construction of a district sewer. The defence chiefly relied on is that some of the property within the district, liable to be taxed, was omitted from the assessment. The Circuit Court, sitting as a jury, found the issues for the defendants, and gave judgment in their favor.

The lot sought to be charged in this proceeding lies in a parallelogram measuring about one hundred feet from north to south by five hundred feet from east to west. There was an agreed statement of facts, as follows : —

" The parties hereto, for the purpose of the decision of this cause, agree upon the following statement of facts, to wit : —

" 1. It is admitted that the city of St. Louis established West Camp Spring Sewer District No. 49 by ordinance No. 9483, and contracted with the plaintiff for the construction of sewers within the limits of said sewer-district as provided in said ordinance ; that the plaintiff performed said contract ; that the cost of the performance of said work under said

contract was $3,124.93 ; that the lot of ground described in the petition is within the limits of said sewer-district; that the defendants (except Ruth A. McCune, who died since the commencement of this suit) are the only claimants of said ground; that the city engineer of said city assessed against the said lot of ground in the petition described the amount of the special tax-bill mentioned in the petition, as the proportion of the cost of said work chargeable against said ground, and issued said tax-bill therefor to the plaintiff, and that the signatures to said tax-bill are genuine.

" 2. It is further admitted that there is a strip of ground one foot wide running along the eastern and southern boundaries of the said lot of ground described in the petition, which strip does not belong to the defendants, and that said strip is correctly shown by the plat or map contained in the answer; that the said strip has not been charged with any of the cost of the construction of said sewer within said district; that said strip of land one foot wide was conditionally dedicated to public use by one Archibald Gamble, who was the owner thereof, in the following words, to wit : " A strip of land one foot in width is reserved along the east and south boundaries of the lot marked Mrs. Tatum's (being the same lot described in the petition), until the owners of said lot shall give ten feet along said boundaries for an alley.' That Gamble did this in 1852 ; that said strip of one foot in width has not been used since said dedication, for private purposes, but that the owners of the ground on the north and west of said strip of one foot have never given ten feet along said strip for an alley, nor any part thereof; that the whole cost of constructing said sewers has been assessed against the property in said district, exclusive of said strip of one foot in width, and of the public highways within said district; that the sewers as established and constructed in said district cannot be reached from defendants' ground except by crossing said strip of ground of one foot in width, so reserved by said

Gamble, or by going west into Jefferson Avenue and then · turning a corner south to the sewer, as shown by the plat in the answer; that the boundaries of the defendants' land on the east and south are not by alleys, but by said strip of one foot in width; that adjoining said strip of one foot on the east and south are public alleys nine feet wide, dedicated by said Gamble, through which alleys the sewers are made; that the whole ten feet, including the strip of one foot in width, is unenclosed and is not graded or improved, and that defendants' fence bounds said ten feet (being the nine-foot alley and the said strip of one foot) on the north and west.''

It is required by law that the whole cost of a district sewer, when completed, shall be assessed as a special tax "against all the lots of ground in the district respectively, without regard to improvements, and in the proportion their respective areas bear to the area of the whole district exclusive of the public highways.'' It is apparent from this that if the strip of land one foot wide, mentioned in the agreed statement, has by any means become dedicated to the public use as part of the public highway, it was properly omitted from the assessment. But if it was private property when the sewer was constructed, an assessment which failed to include it would be manifestly contrary to law and unjust to the holders of other property.

The agreed statement is imperfect, in not showing under what circumstances the strip of ground was reserved by Archibald Gamble. For aught that here appears in that connection, the reservation may have been contained in a conveyance of adjoining land to a private party. From another part of the record, and from the briefs of counsel, however, we gather that the reservation was appended to a dedication of a strip nine feet wide on the east and south of the reserved strip, for an alley. The language used may imply a dedication, or rather an intention to dedicate after fulfilment of the condition. To show that the grantor has

done the exact opposite, and converted his reservation into a grant without condition, there should be some direct or unequivocal evidence. But there is nothing whatever to show this, unless it be the fact that the strip in question has remained unenclosed.

It may fairly be inferred that Archibald Gamble intended by his reservation to interpose a barrier of private property between the owners of the lot herein sought to be charged and the nine-foot alley, until they should dedicate a strip ten feet wide from their property, and thus to compel the establishment of an alley twenty feet wide, to the enhancement of the value of his own land as well as of theirs. By what means does it appear that this purpose has ever been abandoned by Gamble or his representatives? Certainly not by their failure to enclose the strip. For that was never necessary to add emphasis to the reservation, or to explain its object. That object is as patent to-day, and, for aught that appears, is as important to the interests of Gamble's representatives, as it was when the reservation was made. Lapse of time has made no change in the circumstances which induced the reservation, with its stipulated condition, and there is no authority for assuming that the grantor or his representatives have changed their minds. The condition is still unfulfilled, and the strip remains where the reservation fixed it, — an appendage of the private estate of Archibald Gamble, or of those who have succeeded to his rights.

The computation of the amount due upon the defendants' property for the work done was therefore erroneous. But does it follow that the contractor can recover nothing for his labor and expenditure on the sewer? To hold this would be to defeat the manifest ends of justice and the clear intent of the law.

We have heretofore said that, in proceedings of this nature, the tax-bill is the cause of action. *Prendergast* v. *Richards*, 2 Mo. App. 192. This must be understood in

the sense in which we say that the promissory note, in a
suit on such an instrument, is the cause of action.   It is not
literally the bit of paper with the writing it bears, but the
promise to pay, for value received, which the paper proves,
that constitutes the primary and essential ground for a
recovery.   The paper is the evidence which establishes a
promise, and a sufficient consideration to make it binding.
So the special tax-bill is evidence of the computation, ap-
portionment, and assessment by the city engineer, which
create a legal privity between the contractor and the property-
owner, and render the property liable for its ascertained
share in the compensation to be paid for the work done.
But the law, in raising this legal privity and resultant lia-
bility, always assumes a correct computation.  Thus, in
*Prendergast* v. *Richards*, above referred to, it was held that
where the first tax-bill was issued upon an erroneous com-
putation, it might be treated as a nullity, and a second one,
issued upon a correct computation, would be available for
a recovery, although in a suit upon the first there had
been judgment for the defendant.  In *Neenan* v. *Smith*, 60
Mo. 292, our Supreme Court used this language: " The
court properly enough refused defendant's first instruction,
because it made the tax-bill entirely void if any other work
or materials were apportioned or assumed in the bills than
what was included in the contract.   This would have in-
validated the bills, and deprived the contractor, who had
honestly done his work, of all redress, if the engineer had
made a trifling mistake in the matter of the computa-
tion or assessment.   A proposition which would lead to such
a result would be manifestly unjust, and cannot be law."

It is clear, therefore, that the contractor's right to be
paid for his work will not be made to stand or fall forever
by the accuracy or inaccuracy of the engineer's computa-
tion or apportionment.  The engineer may correct his errors
and issue a new tax-bill.  This being the case, there seems
to be no reason, on principle, why the trial court may not,

upon the discovery of an error which is easily determinable and capable of rectification, apply the proper correction in a reduction of the amount to be recovered.   In *Neenan* v. *Smith,* above cited, it was held that an over-assessment. resulting from the introduction of matters not properly chargeable against the defendant's property might be deducted by the jury, and the correct amount be thus ascertained.   The rule is equally applicable here, where an over-assessment results from a failure to include certain assessable property in the apportionment.   The Circuit Court refused to instruct for the plaintiff to this effect.   The judgment is therefore reversed and the cause remanded, with the concurrence of all the judges.