## COMMERCE TRUST COMPANY v. MARY KECK et al., Appellants.

### In Banc, June 19, 1920.

1. **ESTOPPEL: Principal Element.** The principal element of estoppel is that one party by his words or conduct has induced another to do something he would not otherwise have done, and which will result in loss to said other if the inducing party is permitted to act contrary to his inducement.

2. ———: **Suit on Special Tax Bills: Request of Contractor.** A written request of the contractor to enter into a contract with the city for the paving of a street, made by owners of abutting lots before the city confirmed the contract, it being neither alleged nor proven that the request induced him to undertake the work, or that he did so in reliance upon the request, or that any assurance was given him that the tax bills would be paid without any dispute of the accuracy of their amounts or their validity under the law, does not estop said owners, when sued on the tax bills, to defend on the ground that the tax bills are void or excessive.

3. ———: ———: **Acceptance of Damages.** The awarding by the court of damages to the owner of lots arising from the grading of a street and her acceptance thereof do not estop her to contest the

validity of the special tax bills against her lots issued to the contractor in payment for the work.

4. **BLOCK: Definition.** A plot of ground bounded by four streets is the ordinary definition of a city block; and the Charter of Kansas City does not define a city block bounded by four streets, for purposes of street improvement, to be half of such block, or anything less than the usual block.

5. ——: ——: **Unplatted Lots.** The Charter of Kansas City, dealing with a benefit district for street paving, did not, by the phrase that "property so laid off" into "lots or blocks" or "lots and blocks," mean that only land platted by the owner into lots and blocks shall be charged with the cost of grading a street. It did not mean that when the land fronting on a street which has been graded is platted into lots, no matter how shallow they may be, the tax for the grading must be borne by them alone and only to the extent of one-half their depth, unless the land behind them has been platted also. It did not mean that the improvement district must be made to include only one-half of the platted lots fronting on the street to be improved, and the cost of the improvement taxed against that half, and nothing against the other half, simply because the lots lying behind them had not been platted. On the contrary, the charter means that the improvement district is to extend to the middle of the block, or in the discretion of the council to an alley therein, and the lots fronting on the street to the middle line or alley are to be charged with the cost.

6. ——: **Bounded by Three Streets.** A plot of ground three hundred feet square, bounded on three sides by established streets and on the fourth by a street one-half or more of the distance, is to be considered a city block under the Charter of Kansas City, and the street-paving district should be extended to its middle line, there being no alley.

7. **BENEFIT DISTRICT: Inequalities in Width.** Where a large area on the west side of the street to be paved was excluded which should have been included, and a corresponding area on the east side was included, and the area west of the street included was from 43 to 53 feet wide and the area on the east side included was from 250 to 290 feet wide, and the benefit assessments were required to be made in proportion to value, exclusive of improvements, and the included parcels west of the street were valued at $800,000 and those on the east side at $657,515, and there is no showing why the smaller area was valued considerably higher than the larger one, or that the valuations were arbitrary or made in bad faith, or what was the value of the area wrongfully excluded or whether it was benefited by the improvement, it cannot be held that, because of the mere irregularities and inequalities, the tax bills are void.

8. INTEREST: Improvements Begun Under Old Charter. The right view to attach to the saving clauses of the Charter of Kansas City adopted in 1908 is that any proceeding for paving a street begun under the old charter, pursuant to an expression of the will of the Common Council, whether the expression was made by resolution or ordinance, should proceed to completion according to the provisions of the old charter; and where the approval of the ordinance for paving a street antedated the new charter, the tax bills bear ten per cent, according to the old charter.

9. ORDINANCE AND RESOLUTION. When a municipal charter empowers the legislative department to act by resolution, action by ordinance is a compliance therewith, since an ordinance is a more solemn and considered mode of acting than is a resolution.

10. PAVING: Ordinance Changing Grade. Where the contractors had finished their work to the level the ordinance and contract required, and it was accepted as a complete performance of what they had agreed to do, their right to be paid for it is not impaired by the action of the city in changing the grade and authorizing a terminal railway company to cut the street to a lower level.

11. ———: Erroneous Exclusion of Lands: Reduction of Bills. When land has been omitted from an assessment district that should have been included, the tax bills are not necessarily void. Where the charter gives ample authority to correct such errors, and evidence is available by which approximate accuracy in the amount of reduction that should be made may be ascertained, the bills will not be held to be wholly void, but will be properly reduced.

12. ———: ———: ———: Tender. Nor is the reduction to be denied because the property owner did not tender the amount actually due.

Appeal from Jackson Circuit Court.—*Hon. Thomas J. Seehorn*, Judge.

REVERSED AND REMANDED.

*Scarritt, Jones, Seddon & North* and *Cooper, Neel & Wright* for appellants.

(1) Substantial quantities of land both as to area and value that were required under the Charter of Kansas City to bear ratable shares of the cost of this grading have been omitted from assessment and charge, and so the burden on defendants' property has been materially

and unlawfully increased; and so the tax bills are excessive and void. (a) As to the definition of a block or square: Standard Dictionary; Century Dictionary; Gilsonite Co. v. Fair Assn., 231 Mo. 601; Trust Co. v. Blakeley, 274 Mo. 58; City of Ottawa v. Barney, 10 Kan. 270; Olsson v. Topeka, 42 Kan. 709, 21 Pac. 219; Bowlus v. Iola, 82 Kan. 774, 109 Pac. 405; Town of Fruita v. Williams, 33 Col. 157, 80 Pac. 132; Slater v. Fire & P. Board, 43 Col. 225, 96 Pac. 554. (b) As to excessive charge and void bill: Hamilton on Taxation by Spec. Assmts., sec. 542; 1 Page & Jones on Taxation by Assmt., secs. 118, 639, 645; In re New York Protestant Eps., 75 N. Y. 324; Spokane Falls v. Browne, 3 Wash. 84, 27 Pac. 1077; Klein v. Gravel Co., 162 Ind. 509, 70 N. E. 801; Chicago v. Baer, 41 Ill. 306; In re Klock, 51 N. Y. Supp. 909. (2) The taxing district as arbitrarily determined by the Charter of Kansas City and as applied to this particular proceeding, which leaves out of the taxed area lands in material quantities that are self-evidently benefited to the same degree and extent as lands similarly situated within the taxed area and so permits those lands to escape their share of the burden of paying for the grading and the irrational inclusion and exclusion of lands in and from the assessed area resulting from a taxation district of a crazy quilt outline which has a depth of a foot or two in places and less than fifty feet in others and as much as 290 feet in others, is discriminatory and unconscionable; and so the tax bills are void under the Constitution of this State and under the Fourteenth Amendment to the Federal Constitution requiring that no state shall deprive any person of property without due process of law or deny to any person within its jurisdiction the equal protection of the laws, and so the tax bill is void. Trust Co. v. Blakeley, 274 Mo. 52; Realty & Inv. Co. v. Granite Co., 240 U. S. 55, 60 L. Ed. 525, 245 U. S. 288; Independence v. Gates, 110 Mo. 385; Cole v. Skrainka, 105 Mo. 308; Nevada to use v. Eddy, 123 Mo. 557; Kirksville v. Coleman, 103 Mo. App. 215; Crane v. French, 50 Mo. App. 370; Mister v. City of

Kansas, 18 Mo. App. 228. (3) The tax bills purport to bear on their face ten per cent from date, while the Charter of Kansas City 1908, p. 338, art. 8, sec. 24, provides that such tax bills shall bear seven per cent, and so the tax bills are void, or at least the judgment which awarded interest at ten per cent is erroneous. Charter and Ord. Kansas City, 1909, p. 338, art. 8, sec. 24; Const. Mo. Art. 9, sec. 16; Kansas City v. Oil Co., 140 Mo. 471; Barber Asphalt Co. v. Hayward, 248 Mo. 280; Charter and Ord. Kansas City, 1909, p. 478, art. 18, secs. 1, 2, 3; Charter and Ord. Kansas City, 1898, p. 137, art. 9, sec. 2; Page & Jones on Taxation by Assmts., 377. (4) Defendant Plaza Leasehold and Investment Company is not estopped to deny the validity of the assessment district. The other defendants are not affected by this alleged estoppel. Sleeper v. Bullen, 6 Kan. 183; Sedgwick on Stat. and Const. Law, 109; Coffin v. Tracy, 7 Pet. 276; Pav. & Const. Co. v. McGovern, 127 Cal. 638; Hickman v. Kansas City, 120 Mo. 110; McLauren v. Grand Forks, 6 Dak. 397; Mayor v. Porter, 18 Md. 284; Steckert v. East Saginaw, 22 Mich. 104; Grant v. Bartholomew, 58 Neb. 839; Batty v. Hastings, 63 Neb. 26; Birdseye v. Clyde, 61 Oh. St. 27; Ardry v. Dallas, 13 Tex. Civ. App. 442; O'Brien v. Wheelock, 184 U. S. 450, 46 L. Ed. 636; Zeigler v. Hopkins, 117 U. S. 683, 29 L. Ed. 1019.

*James E. Goodrich, B. C. Howard* and *Clarence S. Palmer* for respondent.

(1) The district assessed with the cost of the grading is correctly determined under the Kansas City Charter. In every case the district extends back half way of the block where the land is "laid off on lots or blocks." Sec. 5, art. 9, p. 142, Charter 1889; Sec. 3, art. 8, p. 315, Charter 1908; Crane v. French, 50 Mo. App. 367; Collier Estate Co. v. Paving Co., 180 Mo. 362, 383; Granite Co. v. Gast Realty Co., 259 Mo. 153, 165; Const Co. v. made in the benefit district and some land had been

omitted which should have been assessed, the appellants had the right and it was their duty to show how much their assessment should have been reduced. Having failed to do this they cannot complain of the amount of the judgment against them. Sec. 18, art. 9, Charter 1889; Sec. 24, art. 8, Charter 1908; Neenan v. Smith, 60 Mo. 292; First Nat. Bank v. Arnoldia, 63 Mo. 229; First Nat. Bank v. Nelson, 64 Mo. 418; Neil v. Ridge, 220 Mo. 233. (2) The taxing district established by the city charter and applied in this case is not subject to constitutional objections. Granite Company v. Gast Realty Co., 259 Mo. 153, 240 U. S. 658; Const. Co. v. Withnell, 269 Mo. 546; Withnell v. Const. Co., 259 U. S. 70; L. & N. Ry. Co. v. Barber Paving Co., 197 U. S. 430. (3) The proceedings for grading Main Street were begun under the charter of 1889, and by the terms of the Charter of 1908 the work was to be carried on and the tax bills issued in the manner provided by the prior charter. This continuance of the proceedings was not by virtue of a "superseded charter" but by the mandate of the new charter. Sec. 3, art. 18, Charter 1908; Sec. 2, art. 9, Charter 1889; 2 Dillon on Municipal Corporations, sec. 571, pp. 894, 895; Central Railroad v. Bayonne, 52 N. J. L. 503; Los Angeles v. Waldron, 55 Cal. 283; Hellman v. Shoulters, 114 Cal. 135. But if the tax bills should have been issued under the Charter of 1908, the only difference would be that the interest would be 7 per cent instead of 10 per cent. Unless there was a tender appellants could not claim to be absolved from the payment of interest. Neenan v. Smith, 60 Mo. 292; Neil v. Ridge, 220 Mo. 233. (4) Plaza Leasehold & Investment Company was clearly stopped from claiming that the contract of Spitcaufsky & Wagner was invalid when they signed it, and this appellant and Mary Keck are estopped from alleging that the provisions of the Kansas City Charter violate any constitutional guarantees. Plaza Leasehold and Investment Company expressly requested the contractors to sign the contract and proceed with the work. Mary Keck claimed and was awarded damages under

the charter. O'Brien v. Wheelock, 184 U. S. 491; Daniels v. Tienney, 102 U. S. 414; Ferguson v. Landrum, 5 Bush, (68 Ky.) 230.

GOODE, J.—The petition in this case is in seven counts of similar tenor on as many special tax bills, issued against lots belonging to the defendants for the cost of grading Main Street, from Twenty-third Street on the north to Grand Avenue on the south. The taxed lots are numbered 28, 29, 30, 31 and 32, in Corrected Plat of City View Park, an addition to Kansas City, lying south of the south line of Twenty-fourth Street, and two other lots described by metes and bounds in the same addition. One of the last mentioned lots was made by vacating an alley ten feet wide, and as thus formed, it fronts on the east side of Main Street and extends for one hundred and twenty feet along the rear ends of the numbered lots which front on Twenty-fourth Street. The other lot described by metes and bounds lies south of the alley lot and faces the east side of Main Street for a width not given, but indicated on the map in the record to be from thirteen to fifteen feet, and the depth to be one hundred and thirty-five feet. The location of those parcels of land is shown on the sketch map which goes with this statement, but is not a copy of the record map. Together the lots comprise a tract nearly square, at the southeast corner of Twenty-fourth and Main Streets, the whole of it lying south of Twenty-fourth Street. The numbers of the tax bills in suit and declared on in the different counts of the petition are: In the first count Bill No. 144, against Lot No. 28, for the amount of $1259.58; in the second count, Bill No. 145, against Lot No. 29, for the amount of $1259.58; in the third count, Bill No. 146, against Lot No. 30, for $1102.13; in the fourth count, Bill No. 147, against Lot No. 31, for $1102.13; in the fifth count, Bill No. 148, against Lot No. 32, for $925.66; in the sixth count, Bill No. 149, against the said alley lot for $143.02; in count 7, Bill No. 150, against the second tract described by metes and bounds, for $392.96; all of said tax bills bearing the date, October 21, 1913.

The main defendant is the Plaza Leasehold & Investment Company, a corporation, hereafter referred to as the Plaza Company. The other defendants are Mary Keck, Louise Marold, Amelia Rollert, Frederick Keck, D. M. Allen, G. H. Davis, Hugh F. Tighe and James O. Griggs. The different interests of the various defendants are nowhere shown in the record; but in the joint answer filed by all the defendants except the Plaza Company, they say they own or claim some interest in the real estate described in the different counts, and then adopt the answer and cross-petition of the Plaza Company. Said company was the conceded owner of the aforesaid lots when this action was begun. The answer and cross-petition of the Plaza Company set up eleven distinct defenses in as many paragraphs; but only four of them have been renewed on this appeal and, therefore, no attention will be paid to the others.

The first defense urged here is that substantial quantities of land, both in respect of areas and values, were omitted, which the Charter of Kansas City required to be included in the taxation or benefit district established to contain the tracts of land that should bear the burden of grading Main Street. The tracts alleged to have been improperly omitted are indicated on the sketch map by the capital letters A, B and C. The irregular heavy line shown on the map is the boundary of the assessment district, and runs from the slanting north line of Grand Avenue on the south to the south line of Twenty-third Street on the north.

Omitted Tract A will be observed to run north from the slanting north line of Plaza Road to Twenty-third Street, and to embrace the rear half of the lots abutting on the east line of Main Street (which are bisected by the line of the assessment district), and also a parallelogram of the same width to the east. All of the land abutting on the east side of Main Street, between Plaza Road and Twenty-third Street, is laid off into lots. One half of the depth of these lots, or 54.78 feet, is included in the assessment district; but the east half of said lots is excluded. The alleged omitted feet, is included in the assessment district; but the

east half of said lots is excluded. The alleged omitted Tract A, contains said excluded east half of the lots, and a piece equally wide (54.78') still further east and defined on the east by the heavy line shown on the map, marked at the ends D and E. The contention of the defendants is that the ground from Main Street on the west, to Westport Road on the east, and from Twenty-third Street on the north to Twenty-fourth Street on the south, constitutes a block within the meaning of the city charter, and according to the charter the assessment district should have been carried east from Main Street to the middle of that block.

The plaintiff contends that as the ground lying east of Main Street had been platted into lots, the charter required the line of the assessment district to bisect the lots; that is, run 54.78 feet east of Main Street.

If defendants are right, a tract in the form of an irregular parallelogram more than one, hundred and nine feet in width and more than three hundred feet long on its west line and something less on its east side (the exact dimensions are nowhere given in the record or on the plat filed with it) should have been embraced in the assessment district.

The second parcel of land asserted to have been omitted is designated by the letter "B" on the accompanying map, and consists of the west or rear half of part of Lot 5 and all of the west-half of Lots 6, 7, and 8, of the Corrected Plat of City View Park Addition. Those lots abut on the west side of Main Street and are assessed back from Main a depth of fifty-five feet, are about one hundred and ten feet deep and all the omitted portion is a parallelogram approximately fifty-five feet east and west by a longer distance north and south. It is impossible to ascertain from the record the exact dimensions of the parcel, as no figures are given.

The contention of defendants regarding this omitted tract is, that Baltimore Avenue and Main Street form the east and west boundaries of a block, and Twenty-third Street on the north and City View Avenue, plus the west part of Twenty-fifth Street (there being a jog in the Street), form the north and south

boundaries of a block; that the lots on the east side of said block, and abutting on the west side of Main Street, run back to the north-and-south line · bisecting said block and, therefore, by the charter, the assessment line should have been carried back to said bisecting line, to-wit, to the west line of said Lots 5, 6, 7 and 8, instead of being drawn along the middle line of said lots.

The position of plaintiff is that as the land to the west of said Lots 5, 6, 7 and 8, to Baltimore Avenue, is not laid off into lots, the charter required the line of the assessment district to bisect the lots.

The third tract wrongly omitted, so defendants say, is designated by the letter C, and the same reasons are assigned *pro* and *con*, why said parcel should have been included in the district, and why it should have been omitted, that are assigned by the respective parties regarding Tract B. The defendants contend the center line of the city block alleged to lie between Baltimore Avenue and Main Street and Twenty-third Street and City View Avenue, should have been made the west line of the assessment district, thereby taking in Tract C; whereas the plaintiff contends that as the ground to the west of Tract C was unplatted, the charter required the west line of the assessment district to bisect the lots which lie west of Main Street, and thus leave Tract C. to the west of the district.

The second defense is that the taxed district, when determined according to the charter, left out of the taxed area lands in material quantities which are evidently benefitted as much as lands similarly situated that are included within the taxed area, thus permitting the excluded lands to escape the burden of the cost of grading, and throwing a correspondingly increased burden on the included lands. To distinguish with more precision between the first and the second defenses, we state that the former is that lands required by the terms of the charter to be included in the assessment district, were left out of it; the latter is that lands of large area lying to the east of Main Street were taxed, whereas lands equally benefitted (i. e. to the west of the Street) were left untaxed, because the district

when laid out as the charter directed, could not include them.

Defendants point to the map which accompanies. the record, one so large we have been unable to reproduce it in detail, but instead, have made a sketch to help in making the facts clear. Said map shows the graded part of Main Street; what lands were taxed for the cost of the grading; what were omitted; the amount of the tax levied against each tract; the assessor's valuation of each and the cost of the work. The map also shows the breaks in the boundaries of the assessment district at points where the boundary lines either draw in close to Main Street or expand much beyond it. Between City View Avenue on the north and Twenty-fifth Street on the south, the depth of the district on the west side of Main Street is from forty-three feet to fifty-three feet plus; that is, the depth is 43 feet at City View Avenue, and 53.85 at Twenty-fifth Street. East of Main Street and north of City View Avenue, the district extends back to a line drawn 290 feet east of Main Street. At the north end of the grading, to-wit, from Plaza Road to Twenty-third Street, over a distance of more than four hundred feet, the district is only fifty feet deep; whereas on the west side of Main Street, between Plaza Road and Twenty-third Street, it is 115 feet in depth. Just south of Plaza Road the district runs back 250 feet east of Main Street; or five times the depth on the west side, immediately north of Plaza Road.

The method of assessing property in Kansas City for street grading is neither by the front foot nor by the area, but is based on the values placed by the City Assessor on the parcels to be assessed, regardless of the improvements on them, for the purpose of distributing the cost of a particular improvement among the different tracts included in a benefit district.

The plat which accompanies the record shows the valuations placed by the assessor on all the property in the district on both sides of the street, thereby enabling the amount of the taxes levied west of Main Street and the amount levied on the east to be ascertained.

The third defense deals with the interest on the tax bills, which is at the rate of ten per cent per annum, from their date until paid, or, in the event they were paid within thirty days after their date, they bore no interest. Defendants argue that as the bills were issued after the Charter of 1908 had been adopted, they should have borne interest at the rate of seven per cent until paid, unless paid within thirty days after their date. Plaintiff says the work was begun under the Charter of 1889, and the rate stated in the bills is correct, citing Section 3, Article XVIII, of said Charter.

The fourth defense is that Ordinance 39125, approved March 31, 1908, which established the grades of Main Street at different points from Twenty-third on the north to Grand Avenue on the south, and Ordinance 39798, approved June 10, 1908, which provided for bringing the street to those grades, were both repealed, as to said grades (before the contract for the work was let to the contractors Spitcaufsky & Wagner) by Ordinance 2336 (called the Kansas City Terminal Railway Franchise Ordinance, approved July 7, 1909), and were repealed again by Ordinance 9701, approved August 19, 1911. This defense is met by the plaintiff with the proposition that Ordinance 2336 did not alter or undertake to alter the grade of Main Street, but simply established the grade of Union Station Plaza or Park, through which Main Street ran; that said grade for the park indicated that it would be necessary to cut Main Street at Twenty-fourth below the grades established by Ordinance 39125, in order to make the surface of the street where it runs through the park coincide with the surface of the park; but said ordinance did not provide that it should be cut down. To further meet said defense that the surface of Main Street from Twenty-fourth Street north was reduced below the surface provided for by Ordinance 39125, the plaintiff admits Ordinance 9701, approved August 19, 1911, actually called for a change of the previously established grades north of Twenty-fourth Street to a level seven or eight feet lower; but says this ordinance

was passed after the contract for the grading had been let to Spitcaufsky & Wagner for the grading of the street to the levels fixed by Ordinance 39125; and that said contractors had performed fully their contract by bringing the grade down to the levels specified; that no work was done to reduce the street from Twenty-fourth to Twenty-third to the level fixed by Ordinance 9701, until after the contract of Spitcaufsky & Wagner had been completely executed, accepted by the city as in compliance with their agreement, and they had become entitled to tax bills to pay for it; that said contractors had nothing to do with cutting the street down to conform to Ordinance 9701, but said reduction of the grade was done, with the consent of the city, by the Kansas City Terminal Railroad Company in connection with the grading of Union Station Park, which said company did also.

By way of estoppel the plaintiff pleads that the Plaza Company requested Spitcaufsky & Wagner, in writing, to accept the proposed contract with the city for grading Main Street between Twenty-third and Twenty-fourth streets, according to the terms of the contract beween them and the city, and that this request was made before the contract was entered into between Spitcaufsky & Wagner and the city.

It also pleads by way of estoppel against Mary Keck, that she was a party to a suit instituted in the Circuit Court of Jackson County, on July 28. 1908. and subsequent to the passage of Ordinance 39798, under which the grading was done; a suit filed to determine the damages and benefits which would be caused to the abutting properties by the grading; further, that all the owners of the property described in the petition in this case were made parties to said proceeding, and Mary Keck, the then owner of said property, claimed and was allowed damages for the proposed change of grade; that the cause went to a final judgment determining the damages and benefits that would be caused by the grading; wherefore the then owner and all subsequent owners were estopped to claim Ordinance 39798 was not a valid ordi-

nance, because its validity was adjudged in said proceeding.

The ordinance under which the work was done, to-wit, No. 39798, was approved June 10, 1908, and the contract for the work was confirmed by the city and became effective November 30, 1910.

Judgment was rendered on each count of the petition for the amount of the tax bill declared on in it, together with interest at ten per cent per annum from October 21, 1913. The defendants appealed.

(To avoid possible confusion regarding the present case with the case of Dickey v. Seested, 283 Mo. 167, wherein cross-appeals were taken, it should be said the latter case, and others like it, were on tax bills issued for a regrading of Main Street from Twenty-fourth Street to Grand Avenue, under a different ordinance and contract passed and entered into, subsequent to the grading involved in the present case.)

I. The estoppel pleaded by the plaintiff against defendants, or two of them, the Plaza Company and Mary Keck, is without merit. The Plaza Company signed a
Estoppel. request to Spitcaufsky & Wagner to enter into the contract with the city before the city confirmed the contract; but it is neither alleged nor proved the request induced the contractors to undertake the work, or that they did so in reliance on the request. The Plaza Company and the other petitioners had no assurance that the tax bills would be paid without any dispute of the accuracy of their amounts or their validity under the law. The written request contained no representations that in the least tended to raise an estoppel against the defense that the bills are either void or excessive. The principal element of an estoppel is that one party by his words or conduct has induced another to do something which otherwise he would not have done, and which will result in loss to him if the inducing party is permitted to act contrary to the words or conduct relied on by the other. [Thompson v. Lindsay, 242 Mo. 53.]

Mary Keck, one of the defendants and owner of the lots, was made a defendant in a proceeding to assess the damages and benefits which would be caused by the grading of Main Street, and was awarded damages by the commissioners as the owner of Lots 29 and 32 inclusive herein involved. The commissioners and the court must have determined the work would damage her property; but how does that fact bear on her right to contest the tax bills? The awarding of damages to her, or her acceptance of the award (which by the way, was not in proof), had nothing to do with the acceptance of the contract by Spitcaufsky & Wagner. The matter was between the city and her, and cannot be held to have constituted a waiver by her of the right to contest the tax bills if they were issued for excessive amounts or pursuant to invalid proceedings.

II. Three parcels of land are said to have been left out of the assessment district which the charter required to be included. Of these parcels "A" contains three and one-fourth acres and is of smaller size than the ordinary block in Kansas City. It is bounded by four streets, thus falling within one definition of a city block. [Gilsonite Co. v. St. Louis Fair Assn., 231 Mo. 589, 601.] The word "block" must be given another meaning sometimes to prevent an unjust or unreasonable result, and this was done in construing the clause of the Charter of Kansas City with which we are now concerned in order to determine whether or not tracts of land containing from eight to ten acres, surrounded by streets, but through which other streets were likely to be opened, were blocks in the charter sense, and it was held they were not. [Commerce Trust Co. v. Blakely, 274 Mo. 52.] In the present case Tract "A" in its boundaries and dimensions fulfils so completely the common notion and the common definition of a city block that it ought to be regarded as one, unless the charter is inconsistent with that view. Thus regarded the true east boundary line of the assessment district would be the line "D"—"E" on the map, or half way from Main

Street on the west, to Westport Road on the east, and a strip 109.56 feet wide would be added to the district on the east. It is argued for plaintiff that the words of the charter, and the effect given to them by the Kansas City Court of Appeals in Crane v. French, 50 Mo. App. 367, required the east boundary of the district to bisect the series of lots, seventeen or eighteen in number, which front on Main Street from Twenty-third on the north nearly to Plaza Road on the south, where, in consequence of the slanting course of Plaza Road, the lots pinch out. If we understand rightly the argument, it is that the phrase "property so laid off" into "lots *or* blocks" (the conjunction "or" is used in first clause, and "and" in the second) means that only land platted by an owner into lots and blocks shall be charged with the cost of grading, and that when the land fronting on a street which has been graded is platted into lots, no matter how shallow they may be, the tax for the grading must be borne by them alone and only to the extent of one-half their depth, unless the land behind them has been platted also, in which case the charge must be extended back to the middle line of the block. The practical effect of that interpretation of the charter is to make a block of every series of abutting lots, regardless of their depth, if the land behind them had not been laid off in lots; a view which causes the boundaries of improvement districts to depend, in some measure, on the different depths given by proprietors to lots they plat. On this theory it is contended the lots in Peck's Subdivision are a block, and the district must extend no farther than the middle line of them.

It is said the word "lot" has been held to mean a lot shown on a recorded plat, and Collier Estate v. Paving & Supply Co., 180 Mo. 362, 383, is cited. But that definition in no way assists the argument that a series of platted lots constitute a block within the sense of the Kansas City Charter. The charter did not intend such a result, nor are its provisions consistent with it. The

dominant purpose of the charter was to achieve approximate uniformity and equality in taxing for street improvements. To this end it provided that when the land to be charged had not been laid off into lots and blocks, the cost should be imposed according to the value of the land for 150 feet back from the improved street; if it had been laid off into "lots or blocks" or "lots and blocks" (the two phrases obviously are used synonymously in the Charter of 1889) the taxation district must reach back to the middle of the block, which would be about one hundred and fifty feet in the case of ordinary blocks. The theory of the plaintiff that the line of a district must bisect the lots fronting the improvement, when the land behind them is unplatted, is erroneous as shown by this provision of the charter: "Nevertheless the Common Council shall have power by ordinance to prescribe that such land shall not be charged beyond the alleys in such blocks, if deemed just and equitable." Said provision makes it clear the charter intended the cost of improving a street where the abutting land had been laid off into lots and blocks, should, as a general rule, be imposed to the center of the block, but subject to an exception if the Council deemed it right to stop the district at an alley on the rear of the lots. The point decided in Crane v. French, was that the particular parcel (about two acres in all) there involved, could not be taxed for the improvement of a street, because it did not front on the street. True, the remark was made that the parcel was not laid off in lots, but it is difficult to perceive how that circumstance could have affected its liability to be assessed; and the map which accompanies the opinion shows the platted lots were not bisected by the boundary line; · but, on the contrary, said line ran along the rear of those lots. The opinion expressly declares the boundary of the district should be the center line of the block. The construction contended for by plaintiff would lead to manifestly unjust and irrational consequences, as appears from the argument advanced that abutting lots ten feet deep could only be taxed one-

half their depth if the land in the rear of them had not been platted. An irrational interpretation should not be given to a statute, if it is possible to give a rational one. [Hawkins v. Smith, 242 Mo. 688.]

The framers of the charter, in providing what land should bear the cost of grading streets, had in mind, we think, a city block of the ordinary size, and made one-half its depth, or about 150 feet, the measure of the depth of the area to be charged. But blocks occur in the city of other dimensions and in such cases it may be necessary to give to the word "block" another meaning than that of a piece of land bounded by four streets, as was done in the Blakeley case. Parcel "A" is a block in all essential particulars of size, length, breadth and boundaries, and the east line of the improvement district should have been drawn along the middle of the block.

Parcels "B" and "C" lack nothing of lying in blocks, except that one street in the case of each of them has not been pushed through westward to Baltimore Avenue; Esplanade and Twenty-fourth streets stop about 118 feet short of Baltimore Avenue. They may be carried through at any time; but regardless of that possibility, the parcels "B" and "C" ought to be regarded as lying in blocks within the meaning of the charter, in view of the fact that they lie along with platted lots in larger areas, which are surrounded on three sides by streets. If the aforesaid streets bounding either of the tracts in which the parcels lie, had been carried 118 feet farther west, the areas or tracts wherein lie parcels "B" and "C" would have been bounded on all sides by streets, and as it is these boundaries are nearly complete. If we treat those areas as blocks, the assessment district will take in "B" and "C," and the district for taxation will conform to the charter by reaching back to the middle line of the blocks. If the tracts wherein lie "B" and "C" are held not to be blocks because one of the inclosing streets does not run through to the street in the rear, then the line of the district will fall 150 feet in the rear of Main Street, thereby taking in the omitted parcels and

also land to the west of them and west of an alley which runs behind them; a result less in harmony with the intention of the charter and a just apportionment.

III.   Complaint is made that a large area of land was left outside the west boundary of the assessment district, west of Main Street and south of Twenty-fourth, while a corresponding area was included in it east of Main; also that north of Twenty-fourth Street on the west side of Main, the district is about 115 feet wide and on the east side is only 55 feet. If the defendants are right in their position, these irregularities operated to their detriment by excluding from the district property that should have been included, thereby throwing on their lots a part of the tax which should have been levied against property omitted. We have stated above how much wider the district is east of Main Street than west of it from Twenty-fifth Street and City View Avenue on the south to Twenty-fourth Street on the north; to-wit: from 43 to 53 feet wide west of Main and from 250 to 290 feet wide east of it, as shown in the statement of facts. An inequality of that magnitude is said to make the assessment against defendants unconstitutional and void under the authority of Gast Realty Co. v. Schneider Granite Co., 240 U. S. 55, and Commerce Trust Co. v. Blakely, 274 Mo. 52. There is a fundamental difference between this case and the Gast-Schneider case; for in the latter the cost of the improvement was levied in compliance with the Charter of St. Louis, on the area of property in the benefit district; whereas in the present case it was levied in compliance with the Charter of Kansas City on the benefited lands according to the value of the various parcels, exclusive of the improvements on them, in the benefit district, as determined by the City Assessor; presumably for the reason they were supposed to be benefited in proportion to their respective values. [Charter 1889—see Charter & Rev. Ord. (1898 Ed.) Art. IX, sec. 5, pp. 142 et seq; Charter 1908, Art. VIII, sec.

*Inequalities in Width.*

3, p. 314.] The valuations which determine the tax each tract must bear, are not those ascertained as the basis for ordinary taxes, but those made for the purpose of distributing the cost of the particular improvement. The latter valuations run much higher than those of the ger ral assessment, and are intended to approximate the true value. A computation made from the figures shown on the plat in the record, which is conceded to be accurate, of the valuations placed by the assessor on the tracts on the two sides of the street shows the properties on the west of Main Street were found to be worth $800,000, and those on the east $657,515. The record is silent regarding this disparity and throws no light on the question which naturally occurs, of why the smaller area was estimated to be of considerably more value than the larger area. The estimates were attacked in the answer as arbitrary and made in bad faith; but no evidence was offered to support those allegations and the defense on that ground has not been presented on the appeal. The tracts to the west may possess advantages of some kind for business not possessed by those on the east. The cost of the improvement was thirteen cents, plus, on every dollar of the assessed values on both sides, and the larger part of the cost fell, therefore, on the west-side tracts.

The foregoing facts do not meet fully the contention of the defendants that the irregularities in the width of the district cast an unjust part of the cost on their lots and to an extent which renders the tax bills void; for they argue that if an area had been taken in west of Main Street equal to the area taken in east of it, the district would have embraced much more land than it did, thereby lightening their burden in proportion to the part of the costs which would have been levied against the land taken in. That this is true is patent; but in the absence of any showing as to the value of the area which would have been brought in by making the district as wide on one side as on the other, we cannot know that the amounts of defendants' tax bills would have been so much less than they are as to justify us

in holding them unconstitutional and void. The difference may have been little, and small irregularities in distributing taxes do not make the apportionment void.

There is another pertinent consideration; it may be the topography of the ground west of the west boundary of the district was such that the improvement conferred no benefit on that ground. Regarding those facts which are material to this defense, nothing has been shown; yet we are asked to declare the bills void merely because of the disparity of the taxed areas on the two sides of Main Street. The improvement in the case at bar having been one to be paid for in proportion to values and not areas, we hold the evidence is insufficient to bring it within either the decision or the principle of the decision in Gast Realty Co. v. Schneider Granite Co., supra.

On a first reading, the case of Commerce Trust Co. v. Blakely, recently decided by this court, appears to resemble this one closely; but when studied attentively is found to be different. In it the court construed the identical charter provision we are concerned with, but only in order to determine whether a demurrer to the defendants' answer should have been sustained, and the decision was the demurrer should have been overruled. The answer is not copied, a summary of its facts being given instead. From the stated facts it appears the answer pleaded a disparity greater than we have here in the areas of the taxed district on the two sides of the improved street, and also "that nearly two-thirds of the total amount assessed was assessed against property east of Wyandotte Street." (L. c. 57.) That is, we suppose, against the property on the side where the defendant's lot lay. This course was followed in consequence of construing the city charter to require a special tax district to be carried back to the middle of a block, as laid out on a plat, whatever the size of the block might be; a construction held to be erroneous. For those reasons it was ruled the demurrer to the answer was not well taken. In the present

case the burden of taxation fell more on the west side of the street, and the property of the defendants is on the east side. In this case the defense we are considering is not founded on an erroneous meaning given to the word "block" as used in the charter, although the previous defense involves somewhat the meaning of the word. The Blakely case is not controlling in favor of the defendants upon the immediate question.

IV. The Charter of 1889, in the clause relating to interest on tax bills, reads: "Every special tax bill, if

**Interest.** paid within thirty days from the date of issue, shall bear no interest; if not paid within such time, shall bear interest from the date of issue at the rate of ten per cent per annum, except as herein other- wise provided." [Ann. Char. & Rev. Ord. 1898, Art. 9, sec. 18, p. 153.]

Ordinance 39798, for the grading of Main Street, was approved June 10, 1908, hence antedated the new charter, which became effective August 4, 1908. The new charter did not annul everything enacted prior to its adoption, but contained saving clauses, namely: that all ordinances, reg- ulations and resolutions in force when it took effect and consistent with it, should remain in force until modified or repealed by the Common Council; that all measures and proceedings under consideration in the Common Council, or either house of it, at the time of the adoption of the new charter, and consistent with it, should remain unaffected and might be acted on and disposed of as though they had originated under it. [Char. 1908, art. 18, secs. 1 and 2.] Section 3 of the same article, which bears more directly upon the point in hand, reads:

"Any street paving or repaving or other public im- provement declared to be necessary by any resolution which shall have been passed by both houses of the Com- mon Council of Kansas City, Missouri, prior to the time this charter goes into effect, shall be made and the tax bills in payment thereof shall be issued and all proceed- ings appertaining thereto shall be carried out under the

provisions of the charter and ordinances existing at the time of the passage of the original resolution declaring such street paving or repaving to be necessary; and the adoption of this charter or any ordinance thereunder shall in no wise affect the validity of or render illegal any proceeding of the Board of Public Works or Board of Park Commissioners or of the Common Council or of the City of Kansas City, or of any officer or agent thereof which has been or shall be had or carried out in accordance with the provisions of the charter and ordinances existing at the time of the passage of said original resolution, but any and all such proceedings shall be legal and valid.''

The precise point argued by defendants is that Section 3 of the new charter purported to authorize the completion of and payment for public improvements, according to the provisions of the old charter, only when such improvements had been declared necessary by a resolution passed by both houses of the Common Council, and that the grading of Main Street had never been declared necessary by a resolution, but instead had been provided for only by an ordinance; therefore did not come within the saving efficacy of Section 3. This is too narrow an interpretation of the section, and if adopted it would go far toward frustrating its purpose. The old charter did not imperatively require a resolution of the Council that a public improvement was necessary, except in the single instance of paving, repaving, blocking, gravelling, etc., of a street which was not a business street. [Ann. Char. & Ord. 1898, art. 9, sec. 2, p. 137.] According to the cited section from the old charter, the Council might provide by ordinance, without any preliminary resolution, for other public improvements. Manifestly the new charter does not mean that no proceeding already commenced under the old charter for street work, should be finished and paid for according to the terms of said charter, except the work of paving, etc., a street not used for business. The language of Section 3 will bear that meaning; but viewed in the light of the purpose to be subserved, the right

meaning to attach to it is that any proceeding for im-·
provements begun under the old charter, pursuant to an
expression of the will of the Common Council, whether
the expression was made by resolution or ordinance,
⸱should progress to completion according to the provi-
sions of the old charter.  All public improvements under
the Charter of 1889, were required to be authorized final-
ly by an ordinance; but in the case of only one particular
kind was a resolution also required to be passed prior
to the ordinance and declaring the necessity of the work,
We consider it too plain for controversy, that although
the word "resolution" is used in Section 3, the object of
the section is to save from the operation of the new
charter the proceedings for any public work which the
Common Council had previously authorized in either
mode by which its will might be expressed.  When a
municipal charter empowers the legislative department
of the municipality to act by resolution, action by ordi-
nance is held generally to be a compliance with the char-
ter; for an ordinance is a more solemn and considered
mode of acting than a resolution.  [2 Dillon, Mun. Corp.
(5 Ed.) sec. 571; Railroad v. Bayonne, 52 N. J. L.
503, 508; Los Angeles v. Waldron, 65 Cal. 283; Hellman
v. Shoulters, 114 Cal. 136.]  The tax bills were rightly
issued to bear interest at the rate of ten per cent.

V.   The record supports the position of the plaintiff
that the grades fixed for Main Street by Ordinance 39125,
and to which the contractors were required by their
contract to reduce the street, were not changed by Or-
dinance 2336, called the Terminal Railway Franchise
Ordinance, which was passed before the con-
tract with Spitcaufsky & Wagner was con-
firmed November 30, 1910.  If it had altered
the grades, probably there would be weight in the argu-
ment that a contract to bring the street to grades pre-
viously abrogated, infringed the rights of abutting own-
ers and of the owners of tracts to be assessed for the
work..  Without setting out the terms of Ordinance 2336,

*Changing.*
*Grade.*

we state that it did not affect the grades of the street
further south than the south line of Twenty-third street,
which was the north boundary limit of the part of the
street Spitcaufsky & Wagner were to grade; that is to
say, they were to and did grade from Twenty-third Street
south to Twenty-seventh Street or Grand Avenue, accord-
ing to the levels fixed by Ordinance 39125.

Ordinance 9701 altered the grades from the south
line of 20th Street to the center line of 24th Street;
but that ordinance became effective August 19, 1911,
or nearly a year subsequent to the date of the contract
between the city and the contractors, for a grading con-
forming to Ordinance 39125. The contractors finished
their work to the level the contract required, and it
was accepted by the city as a complete performance of
what they had agreed to do. The right of the contract-
ors to perform their undertaking and be paid for it was
not impaired by the conduct of the city in changing the
grades and authorizing the Kansas City Terminal Rail-
Way Company to cut the street to a lower level north
of Twenty-fourth Street, before the contractors had
finished.

VI. The defendants say no abatement from the
amount of the bills in suit on account of the omitted
tracts can be made, because the assessment against the
various benefited parcels is based upon the valuation of
Abatement. the City Assessor, and it is impossible to
know what valuations he would have put on
the omitted tracts; therefore, it is impossible to know
how much ought to be taken off the bills in suit; where-
fore the bills must be held void. It is true we cannot
know exactly the values the City Assessor would have
given to the outlying parcels, and so cannot ascertain
exactly the amount that ought to be deducted from the
bills in suit. Nevertheless approximate accuracy can be
attained. Testimony can be introduced, including the
City Assessor's, as to what is the value of those parcels;
and from that testimony the court can determine how

much to abate from the bills. The defendants themselves, in their brief, undertake to show the value of the excluded parcels, estimated in proportion to the value put by the City Assessor on those included, and assert the three parcels were worth a total of $471,282; which is rather exact.

We are cited to authorities holding that when land has been omitted from an assessment district that should have been included, the omission renders the tax bills void. [Hamilton, Special Assmts., sec. 542; Page & Jones, Taxation by Assmts., secs. 639, 645; Matter of New York School, 75 N. Y. 324; Spokane Falls v. Browne, 3 Wash. 84; Klein v. Gravel Co., 162 Ind. 509; Chicago v. Baer, 41 Ill. 306; In re Klock, 51 N. Y. Supp. 897.] The cited decisions deal with assessments where there was no authority given by the statute under which the work was done to correct errors. In our opinion the Kansas City Charter gives ample authority for correcting the error in question. The provisions made in it for the correction of errors in tax bills, has been construed by this court on several occasions; one involving a prior charter with substantially the same provision; and the other the Charter of 1889, under which the present work was done. In both cases the ruling was that the charter authority was broad enough to permit the correction of mistakes, not only in calculation and the apportionment of the cost of construction, but other mistakes. [First Nat. Bank v. Nelson, 64 Mo. 418; Neil v. Ridge, 220 Mo. 233.]

In the case cited first, the grading was for a sidewalk on both sides of a street; but the cost was wrongly apportioned between the two sides. The court held the charter provisions did not confine the power of correction "to mere mistakes in calculations upon correct data, but it equally extends, in our judgment, to correct calculations upon wrong data. The error in this tax bill was not error in the apportionment of the costs on the basis adopted, but the error was in the basis upon which it was made." These remarks are

pertinent to the present case and are quoted with approval in the later case of Neil v. Ridge. In the opinion in the later case the expression is used that the power of correction embraces errors and mistakes of every character and nature which are susceptible of an absolute determination by the trial court. That remark was not essential to the decision and was a *dictum*.

Still more pertinent is the case of Creamer v. McCune, 7 Mo. App. 91, where the tax bill was too large by reason of certain property having been omitted from the district, and it was held the trial court should have corrected the error and rendered judgment for the proper amount. See, too, Johnson v. Duer, 115 Mo. 356, where it was held that under the Charter of Kansas City a tax bill for sewer work was not invalidated by the fact that it included the cost of a part of the sewer laid through private property instead of along the street; but was good for the cost of the sewer in the street; also, Dickey v. Porter, 203 Mo. 1, 29, where there was a contention by the defendant that the tax bill issued for a portion of the cost of the construction of a sewer was void, because more masonry was put in than was required by the contract. This court held if that were true, the effect was no more than to entitle the defendant to a credit for the cost of the masonry in excess of the contract. We hold it is within the power of the trial court to determine from evidence the amount that ought to be deducted from the tax bills in question by reason of the parcels omitted from the district.

But the plaintiff insists that the defendants are not entitled to a deduction because they did not tender to plaintiff, as holder of the bills, the amount which they admitted was due, after deducting for the omitted tracts. Tender. That portion of the charter provision in question simply determines whether or not the costs shall be adjudged against the defendant in a tax bill suit who claims he is entitled to a deduction. If he tenders the full cost of the work and establishes at the trial that he has done so, then he is not cast in costs.

The clause does not undertake to deny him any relief from the excess merely because he did not make a tender of the amount of the bill, minus such excess.

The judgment is reversed and the cause remanded. All concur, except *Woodson, J.,* absent.