# WALTER S. DICKEY v. FERDINAND C. SEESTED, Appellant.

# WALTER S. DICKEY, Appellant, v. FERDINAND C. SEESTED.

### In Banc, June 19, 1920.

1. **CONSTITUTIONAL LAW: Benefit District: Charter Provision.** The charter provision for determining the boundaries of an assessment district for the grading of a street directed that where tracts of land to be taxed with the cost of the improvement are divided into lots and blocks, the line of the district shall extend back from the street line to the middle of the block, and where the tracts are not divided into lots or blocks, the line shall extend back 150 feet from the near line of the street. *Held,* that this method of fixing the boundary line is not bound to operate so unjustly in practice as to violate the constitutional right of abutting property owners, or so as to work injustice at all, and is not therefore in violation of the Fourteenth Amendment; for if all the blocks were 300 feet square, the line of the assessment district would extend 150 feet into the block, and the area included in the district would be the same whether or not the land were laid off into lots and blocks, and no one could know without proof whether or not they are so laid off.

2. **BENEFIT DISTRICT: Narrow Block.** Where the charter provided that the boundary line of the assessment district shall extend back to the middle of a tract laid off into blocks and lots, the district cannot be made to include the whole of a block only 76 feet wide, but only half of it.

3. ———: ———: **Former Street.** Where the charter provided that the boundary line of the assessment district shall extend back from the street to be paved or graded to the middle of the tract if laid off into blocks and lots, and 150 feet if not laid off into lots and blocks, and the evidence shows that on an original plat of the addition a street near the middle of a block was dedicated to public use, that it had been used by the public and had not been vacated, and the evidence is sufficient to uphold the finding of the trier of the fact that it was still a public street when the ordinance was enacted, it must be held, on appeal, that the boundary line of the district was midway between this street and the street to be

graded, although a strip only thirty feet wide is thereby included in the district.

4. **SPECIAL TAX BILLS: No Installments.** Where the proper board recommended that the grading should be paid for in tax bills to fall due in four equal annual installments, and the ordinance authorizing the grading merely provided that it should be paid for in special tax bills, and did not purport to repeal or modify the original ordinance which provided for annual installment bills and was as much authority for the grading as the other, a single tax bill payable on demand for the total amount of the cost, and drawing interest if not paid within thirty days after its date, is invalid.

5. ———: ———: **Tender: Estoppel.** Nor is the defense that the one tax bill for the whole cost is invalid unavailing because the property owner did not make tender of one-fourth the amount thereof at the end of each year; nor in an action at law can estoppel be raised as a defense that the bill is void for being contrary to the ordinance and charter in the matter of installments, time for suing on it, and rates and periods on interest, merely because he did not offer to pay at the end of each year one-fourth of the amount of the single bill.

Appeal from Jackson Circuit Court.—*Hon. William O. Thomas*, Judge.

REVERSED.

*Piatt & Marks* and *Clarence S. Palmer* for plaintiff.

(1) The court should have rendered judgment for the full amount of the tax bill. The work was extra work not contemplated by the terms of the charter. It was purely incidental and was necessary to produce a properly graded street, and the city had authority to direct the extra work to be done and to determine the price thereof. Allen v. Rogers, 20 Mo. App., 290; Johnson v. Duer, 115 Mo. 366; Heman v. St. Louis, 213 Mo. 538; State v. Jersey City, 29 N. J. Law, 441; Wood v. Fort Wayne, 119 U. S. 312; Slusser v. Burlington, 47 Iowa, 300; White v. City of New Orleans, 15 La. Ann. 667. The taxing district for payment of the cost of grading providing for extending the line back from

the street graded to the middle of the block where the land is laid off in lots or blocks is reasonable and logical and not subject to any constitutional objection even though, on account of the different distance of streets on opposite sides of the street graded the district is wider on one side than on the other. Granite Co. v. Gast Realty & Inv. Co., 259 Mo. 153; Paving Co. v. Fleming, 251 Mo. 210; Gilsonite Co. v. St. Louis Fair Assn., 231 Mo. 589; Gast Realty & Inv. Co. v. Granite Co., 240 U. S. 55; Railroad v. Barber Asphalt Paving Co., 197 U. S. 430; Construction Co. v. Withnell, 269 Mo. 546; Withnell v. Ruecking Const. Co., 259 U. S. 63. (2) The taxing district against which special tax bills were issued for grading Main Street is in accordance with the city charter. Under that charter, as construed by the Kansas City Court of Appeals, no other district would have been valid. Crane v. French, 50 Mo. App. 367; Collyer Est. Co. v. Paving Co., 180 Mo. 262; Granite Co. v. Gast Realty & Inv. Co., 259 Mo. 153; Charter, sec. 26, art. 8; Charter, sec. 37, art. 13; Art 9; City of St. Louis v. Provenchere, 92 Mo. 66; Fowler v. St. Joseph, 37 Mo. 228; Cooley on Taxation, p. 401; Christian v. Tausig, 88 Mo. App. 602; Kemper v. King, 11 Mo. App. 116. But even if the court should determine that the small amount of land which should have been included in the taxing district was omitted, defendant is entitled to no relief, because he should have shown the amount by which his special tax bill would be reduced. Sec. 24, art. 8, Charter; Neenan v. Smith, 60 Mo. 292; First Nat. Bank v. Nelson, 64 Mo. 418; Neil v. Ridge, 220 Mo. 233; Embree v. Road District, 257 Mo. 593; Embree v. Road District, 240 U. S. 242. (3) The fact that the tax bills were not issued as installment bills constitutes no defense. The only ordinance passed under the article of the Charter relating to the issue of tax bills had no provision for installments, but if Ordinance 16750 made it the duty to issue installment bills, the bills, as issued were in effect such bills. Defendant has not been injured. If the bill had been

issued as an installment bill at the time suit was brought
the first installment was in default and the whole bill
became due.  Therefore defendant's burden was not in-
creased one cent, and was decreased one per cent per
year.  Sec. 3, art. 8, Charter; Granite Pav. Co. v. Mc-
Manus, 244 Mo. 184; City of St. Louis v. DeNoue, 44
Mo. 156; Eyerman v. Scollay, 16 Mo. App. 498; Stadt-
ler v. Roth, 59 Mo. 400; Creamer v. Allen, 60 Mo. 292;
Rolla v. Schuman, 189 Mo. App. 252; Barber Asphalt
Co. v. Hayward, 248 Mo. 280; State ex rel. v. Reynolds,
218 S. W. 337.  (4) An error in the amount of the tax
bill or in its form will not subject plaintiff to the loss of
interest.  If the tax bill is issued for too great an amount
defendant could have offered to pay the correct amount
and then would have been absolved from both interest
and costs.  Neenan v. Smith, 60 Mo. 292; Neil v. Ridge,
220 Mo. 233.

*Scarritt, Jones, Seddon & North* for defendant.

(1) The benefit district was determined mechan-
ically and in blind obedience to the technical language
of the city charter and without reference to the benefits
conferred by the grading, and thereby certain lands
outside the district, which were self-evidently bene-
fited by the grading more than certain lands within the
district, were omitted from assessment and so escaped
taxation, and defendant's land was excessively and with
partiality charged on that account.  Defendant's land
was not within 200 feet of the graded street and is
charged with a ratable part of the grading cost, while
the owners of similar lands, and lands in considerable
quantities, lying within 50 feet of the graded street
wholly escaped taxation.  This is unlawful discrimi-
nation.  It is the favoring one owner as against an-
other.  It is an attempt to distribute with partiality
the burdens of taxation and the alleged benefits of a
public work and so constitutes the taking of defend-
ant's property without due process of law and denies

him the equal protection of the laws contrary to the Fourteenth Amendment to the Federal Constitution as well as our own constitutional guaranty in that respect. Trust Co. v. Blakely, 274 Mo. 52; Realty & Inv. Co. v. Schneider Granite Co., 240 U. S. 55, 60 L. Ed. 525; Granite Co. v. Gast R. & I. Co., 259 Mo. 153, overruled in 240 U. S. 55. (2) Upon the assumption that the benefit district prescribed by the city charter as applied to the physical situation involved here is unlawful, nevertheless, lands in material quantities which were required by the charter to be assessed with the cost of this grading have been omitted from such assessment and so the tax bill imposes an illegal and excessive burden on defendant's land; the amount of excess while material is problematical and not ascertainable by the court, owing to the charter method of apportioning the tax, which is according to valuations to be fixed by the city assessor, which have not yet been made, and hence the tax bill is void. Charter and Ordinances of Kansas City, 1909, p. 315, art. 8, sec. 3. (a) As to the definition of a block or square: Standard Dictionary; Century Dictionary; Gilsonite Co. v. St. Louis Fair Assn., 231 Mo. 601; Trust Co. v. Blakely, 274 Mo. 58; City of Ottumwa v. Barney, 10 Kan. 270; Oleson v. City of Topeka, 42 Kan. 709, 21 Pac. 219; Bowlus v. City of Iola, 82 Kan. 774, 109 Pac. 405; Town of Fruita v. Williams, 33 Col. 157, 80 Pac. 132; State v. Fire & P. Board, 43 Col. 225, 96 Pac. 554. (b) As to excessive charge and void bill: Hamilton on Taxation by Spec'l. Assmts., sec. 542; 1 Page & Jones on Taxation by Assmt., secs. 118, 639, 645; In re New York Protestant Eps., 75 N. Y. 342; Spokane Falls v. Brown, 3 Wash. 84, 27 Pac. 1077; Klein v. Nugent Gravel Co., 162 Ind. 509, 70 N. E. 801; City of Chicago v. Baer, 41 Ill. 306; Independence v. Gates, 110 Mo. 385; Cole v. Skrainka, 105 Mo. 308; City of Nevada v. Eddy, 123 Mo. 557; Kirksville v. Coleman, 103 Mo. App. 215; Mister v. City of Kansas, 18 Mo. App. 217; Wills v. Burbank, 182 Mo. App. 68; In re Klock, 51 N. Y. Supp. 897; State

ex rel. v. Reynolds, 218 S. W. 337. (3) The tax bill in suit is required to be paid on demand. And if not so paid suit to enforce it must be brought within two years from its date, the date being June 8, 1915. While the ordinance providing for this work, No. 16750, of August 7, 1913, required the tax bills "to be paid in four equal installments in the manner and at the times provided in Section 25, Article 8, of the Charter of Kansas City." The tax bill is not in accordance with ordinance and charter authority and is therefore void. There is no tax bill. The suit fails. Charter 1908, art. 8, sec. 25; Charter 1908, art. 8, sec. 24. Reference is made to the authorities cited under the preceding proposition. (4) The trial court found, the tax bill in suit to be excessive by about twenty per cent of its face value. The tax bill was undoubtedly illegal as being a demand bill instead of a bill payable in installments as the grading ordinance required. The bill as issued is therefore not a good bill. It is no tax bill, because wholly unauthorized by law. It did not present, as the charter required it should, the correct amount nor the correct time of payment. Neither its issue nor its existence can be regarded in any sense as a demand that the defendant pay a legitimate, definite claim at a lawful time. But notwithstanding this the trial court allowed seven per cent interest on the amount he found the tax bills should have been issued for from the date the bad tax bill was issued. Under these circumstances no recovery should have been had; the plaintiff made no case, or at least, no interest should have been allowed before suit was begun and then only the statutory rate of six per cent. How can it be otherwise when no legal tax bill was issued? R. S. 1909, sec. 7179; Ry. Co. v. Knapp, 160 Mo. 398; Wolff v. Matthews, 98 Mo. 246; Warren v. Real Estate Co., 121 Mo. App. 432; Shinn v. Wooderson, 95 Mo. App. 6; Trimble v. Ry. Co., 180 Mo. 574; Gilsonite Co. v. St. L. Fair Assn., 231 Mo. 603; Boonville v. Stephens, 238 Mo. 359; Fruin v. O'Malley, 241 Mo.

255. (5) The contract price of excavation was 96½ cents per cubic yard. The total price allowed the contractor was $178, 642.27, which was arrived at by allowing 148,135 cubic yards of excavation at the contract price of 96½ cents per yard and 17,846 cubic yards of forced slides as $2 per cubic yard; that is $2 per yard for materials actually excavated from private lands wholly outside of the street lines. This excavation was illegal; a charge for it against other lands was unlawful; the mayor and common council, who alone can authorize street grading and they only by ordinance, did by the ordinance and contract in evidence authorize Main Street to be excavated only within the vertical lines of the street. Charter, art. 7, sec. 1; art. 8, sec. 2.

GOODE, J.—These two cases are cross-appeals taken by both plaintiff and defendant from a judgment on a special tax bill; the plaintiff, because the judgment was for less than the amount of the tax bill, and the defendant, because he asserts the plaintiff should not have been given judgment for any amount, or, if this is not so, the judgment was for too large an amount.

The tax bill was No. 60, issued under Ordinance 18683, approved January 27, 1914, against the south 116 feet of Lot 8 of Thomas M. Jones's Addition to Kansas City, as evidence of a special tax and assessment for the proportionate share of said lot in the cost of the public improvement provided for in said ordinance, which was for the grading of Main Street in said city, from Twenty-fourth Street to Grand Avenue. The grading work was done under a contract between the city and J. B. and Charles Spitcaufsky, doing business as Spitcaufsky Bros. The tax bill contains these recitals: that the work was completed according to contract by said firm of contractors, was accepted by the Board of Public Works; the sum mentioned was duly levied, apportioned and charged against said lot; the tax bill

was a lien thereon for two years after June 8, 1915, the date of the bill, and it bore no interest if paid within thirty days from its date; otherwise bore interest at seven per cent per annum. The amount of the bill is $1375.79.

Plaintiff instituted the present action as the owner and holder of the bill by assignment from Spitcaufsky Bros. The petition avers the following facts; the issuance of the bill to Spitcaufsky Bros. by the Board of Public Works of Kansas City, on June 9, 1915, in part payment of the cost of grading Main Street; on said date the board duly certified to the City Treasurer the apportionment of the cost of the work; the work was done under the aforesaid ordinance; said Lot 8 is chargeable in favor of plaintiff on account of the cost of grading work in the sum aforesaid, and the defendant owned the lot, or some estate or interest therein.

The tax bill itself is set out in full in the petition, which concludes with a prayer for a special judgment against defendant for the amount of it, with interest from June 8, 1915, at the rate of seven per cent and for the enforcement of the lien of the bill against the lot.

The recommendation and resolution of the Board of Public Works to the Common Council, which the charter required, recommended not only the grading of Main Street, but the opening and widening of it, all as part of one scheme of improvement; and the first ordinance to authorize the work, which was approved August 7, 1913, included the opening and widening of that street; but we are concerned only with the grading; additional authority for which was given by a second ordinance (No. 18683, approved January 27, 1914, as heretofore stated).

The answer opens with a general denial of the averments of the petition, except that of defendant's ownership or claim of ownership, of the lot. Other defenses are pleaded, the averments of which we summarize. First, the Charter of Kansas City, in Section

3 of Article VII, requires the cost of grading a street, such as Main Street, to be apportioned and charged against the several tracts of land within the prescribed district, according to the respective values of the lots, exclusive of any improvements thereon, as fixed by the City Assessor. Said section prescribes the district in which all the tracts assessed for grading a street shall be included, according to several possible contingencies, as follows:

"The cost of all grading, including the grading of sidewalks, shall be charged as a special tax on all lands on both sides of the street, avenue, or public highway, or part thereof, graded, within the following limits, viz.: In case the land fronting on the street, avenue or public highway, or part thereof, graded, be laid off in lots or blocks, property so laid off from the line of the street, avenue or public highway, or part thereof, graded, back to the center line of the block or blocks, shall be so charged, whether fronting on the street, avenue or public highway or not; nevertheless, the Common Council shall have power by ordinance to prescribe that such lands shall not be charged beyond the alleys in such blocks, if deemed just and equitable, and in case any land fronting on such street, avenue or public highway, or part thereof, graded, be not laid off into lots or blocks, then the land not so laid off, and the land in the rear thereof on the line of the street, avenue or public highway, or part thereof, graded, back one hundred and fifty feet, shall be so charged, whether fronting on the street or not; and land liable for such grading shall be charged according to the value thereof, exclusive of improvements thereon, as herein provided." [Charter Kansas City, 1908, Sec. 3, Art. VIII.]

For convenience of reference we have copied the language of the section, instead of the substance of it, as set forth in the answer.

The averment is that said method of assessing for street grading was followed in apportioning the cost of grading Main Street and in assessing defendant's

lot; that said method is not based on the benefit conferred on the different assessed tracts by the work, but is arbitrary, technical, unreasonable, confiscatory as to this defendant, and in conflict with the Fourteenth Amendment to the Constitution of the United States, which provides that no state shall deprive any person of property without due process of law, nor deny to any person the equal protection of the law; is contrary to Section 21, Article II, of the Constitution of Missouri, which provides that private property shall not be taken or damaged for public use without just compensation, and to Section 30, Article II, of the State Constitution, which provides that no person shall be deprived of property without due process of law.

As part of the supposed alleged arbitrary, unjust and "mechanical" determination of what lands should be included in the assessment district, it is further alleged that said district on the west side of Main Street extended back from the street in one place only twenty-seven feet, and in another only twenty-eight feet; that the average depth of the prescribed assessment district, over a distance along the graded street of 281 feet, is less than thirty-three feet on the west side; while the depth of the district on the east side, where defendant's land is located, is as much as 270 feet; making the benefit district on the east side from eight to ten times deeper than on the west side, and taking in for assessment defendant's lot, which lies more than two hundred feet east of Main Street. It is averred that if the depth on the east side of the street had corresponded with that on the west side, defendant's lot would have escaped assessment; whereas, if the district had been extended as far back on the west side as it was on the east, it would have included an area of ground which, on being assessed its part of the cost of the improvements, would have relieved the defendant's lot of one-half the burden now imposed on it.

In the same connection it was alleged that the sum of $64,086.15 was assessed against lands lying on the

east side of Main Street, which would have fallen out-side the taxed area, if the district had extended no fur-ther to the east than to the west.

The second defense is that even though the said charter provision of Kansas City, for determining the district wherein property shall be assessed for grading work, and the particular ordinance which defined the district to be charged with the cost of grading Main Street, are constitutional and valid, nevertheless, in the present instance lands of large extent and great value that properly were chargeable with the cost of grading Main Street and should have been included in the as-sessment district, were arbitrarily omitted therefrom, and from any portion of the cost of the improvement, where-by the portion of the cost that said omitted land should have borne was wrongfully cast upon this defendant and other persons whose lots were embraced in the as-sessment district.

One of the tracts said to have been omitted from the assessment district in violation of the charter, is part of a parcel seven hundred feet long, north and south, and six hundred feet east and west, comprising nearly eight acres, lying immediately west of the north-west corner of the assessment district, with its north line abutting on Plaza Avenue or Twenty-fourth Street, and owned by the city, used by it for a public park, known as Union Station Park, and undivided into lots or blocks. The theory is that part of this parcel of land should have been included because it was not laid out in lots or blocks and therefore fell within the charter requirement that lands unplatted in that way shall be assessed for grading to the extent they are within 150 feet of the graded street. It should be said in this con-nection that the Charter of Kansas City, provides the city's lands shall bear their proposition of the cost of public improvements. [Charter 1908, Sec. 26, Art. VIII.] What was omitted from this parcel that defend-ant says should have been included in the assessment district, is so much of a strip 150 feet in width lying

just immediately west of the assessment district, as is within one hundred and fifty feet of the west side of Main Street, extending from Plaza Road or Twenty-fourth street to · Twenty-fifth Street.

The defendant also says that a parcel of ground 65 feet wide by 175 feet long, and really included in the strip 150 feet wide mentioned in the foregoing paragraph, should have been included in the assessment district, even if his contention as to the one-hundred-and-fifty-foot strip be wrong. The tract referred to compromises Lots 21 and 22 of Corrected Plat of City View Park and a small part of Lot 29 of Scarritt & Peery's Subdivision, and a part of the lot just west of the alley west of these lands, the west line thereof being half way between Main Street and Baltimore Avenue. The theory, as we understand it, is, that if these parcels are regarded as still platted into lots and blocks, those parcels fall within the charter requirement that when lands fronting on a graded street' are laid off into lots and blocks, such land shall be assessed for grading back to the center of the block (*not the center of the lots*); that if this requirement of the charter had been obeyed, the west line of the assessment district would have coincided with the center of the block bounded by Main Street on the east and Baltimore Avenue on the west, these streets being parallel and about 245 feet apart, instead of going through the center of the area lying between Main Street and the alley west of it. The argument regarding those two tracts (one embraced in the other) runs along two lines: first, if the ground is to be considered undivided into lots or blocks, since the city took it over for a public park, it should be assessed for the grading of Main Street to the depth of one hundred and fifty feet; whereas if it is to be considered as divided into lots and blocks, as originally it was, it should be assessed to the middle of the block.

Two other parcels said to have been left out of the district that should have been included in it, are Lot 1, and part of Lot 2 and Lot 56 and part of Lot 55 of Vineyard's Fourth Addition and lying on the west side of

Main Street and on the north and south side of 25th Street. The line of the assessment district was made to run through said Lots 2 and 55, leaving outside part of those lots and all of Lots 1 and 56. This was done by the city on the theory that those lots (1 and 56) were bounded by a street on the west, which in connection with Main Street on the east, 25th Street on the south and City View Avenue on the north, made a block of the lots, and under the city charter the line ought to run through the middle of the block. But defendant contends there was no street on the west; hence no block there; and therefore the assessment district should have been carried back 150 feet.

We have marked the rough plat which accompanies this opinion with the letters A, B, C, D and E to indicate the tracts said to have been wrongly excluded from the taxed area. The heavy line on said plat defines the boundaries of the district, and the dotted line shows where the defendant contends the east line of the assessment district should have been drawn in order to make the apportionment for the work approximately equal as against the properties respectively on the east and west sides of Main Street.

The third defense is that the ordinance under which the work was done, required the tax bills issued to pay for it should be payable in four equal installments; the first to fall due June 30, 1916 and each of the other installments annually thereafter; the installments to bear seven per cent interest until due and eight per cent after default; that instead of issuing against defendant's lot bills thus payable, the Board of Public Works issued a bill payable on demand for the total amount of the cost of grading assessed against the lot, and drawing interest at the rate of seven per cent annum if not paid within thirty days after its date.

The fourth defense is that the tax bills were issued to pay for the total cost of the work to the amount of $178,642.27, including therein the cost of excavating 17,846 cubit yards of "forced slides" at the rate of two

Dickey v. Seested.

dollars per cubic yard. These so-called "forced slides" were material loosened by blasting or otherwise, from the walls of the cut made in Main Street in bringing it to grade. The contract provided that the walls should be left vertical; but as reducing the street to the established grade made a cut ranging from thirty to eighty feet in depth, and averaging about sixty feet, the walls on either side could not be retained in a vertical condition, but earth, rock and shale would loosen from them and slip into the street. To prevent these slides the City Engineer, after the street had been cut down to grade, ordered the contractors to cause the walls to be sloped back from the base; but it seems slides continued to happen in spite of the efforts made to prevent them. For this work the contractors were allowed pay at the rate of two dollars per cubic yard, and the cost of it was included in the tax bills; the defendant contends and the court found, wrongly included, for the judgment in plaintiff's favor was for only $1100.90, with interest at seven per cent, due June, 1915, instead of for the face value of the bill with interest.

The appeal taken by the plaintiff questions the correctness of the judgment for deducting from the tax bill defendant's proportionate part of the cost of the extra work done to prevent slides.

It will have been perceived from the part of the Kansas City Charter of 1908 quoted above that the method of assessing property for street grading is not by the front foot, nor by the area of the parcels of land within the defined benefit district, but by a pro-rata assessment of the value of said lands as fixed by the City Assessor.

We show in figures some other facts. All the grading work consisted of excavating and the total number of cubic yards excavated was 165,981. The number of cubic yards paid for at the contract price of 96½ cents per cubic yard, was 148,135.

The total cost of that part of the work was $142,950.27; and for defendant's proportionate part of that amount judgment was rendered for plaintiff.

The number of cubic yards of excavating paid for at two dollars per cubic yard (work done to prevent slides) was. 17,846. The total cost of that work was $35,692; and this amount the court held could not be charged against the ground in the assessed district. The total cost of the grading was $178,642.27.

The total amount assessed against the parcels of ground on the east side of Main Street, as we compute it from the figures on the map (No. 7½) put in evidence and conceded to be correct, was $124,102.44. The total amount assessed against the parcels of ground on the west side of Main Street, as we compute it from said map, was $54,539.83. The excess of assessment against property on the east side over the assessment against property on the west side, was $69,526.61. These calculations probably are not exact; but they sufficiently approach accuracy to show the large difference in the amounts assessed on the two sides of the street. The part of said excess that fell upon property on the east side, which lies beyond the dotted line (to-wit, east of the line defining a depth of east side property corresponding with the property on the west side) is $64,086.15.

The comparative areas of the lands assessed on the two sides run in these ratios:

"Q. Have you at my request computed the areas of the private property in each block on either side of Main Street from Twenty-fourth to Twenty-sixth Street between the benefit district shown upon this plat Exhibit 7 in evidence? A. I have.

"Q. Will you state, if you please, within the area the result of that computation? A. From Twenty-fourth to Esplanade the area on the west side, 12,785 square feet: east side, same block, 59,006 square feet.

"Q. About what is the ratio or proportion? A. Their ratio is 4.6. In block Esplanade to City View on the west side 26,600. On the east side 77,419. Their ratio 2.9. In block City View to Twenty-fifth Street on the west side, 8,197 square feet; on the east side, 46,673. Their ratio 5.7. In block Twenty-fifth to Twenty-sixth

Street the area on the west side, 48,181 square feet; on the east side, 76,858 square feet. Their ratio 1.6.'' [Testimony of Charles D. Woodward, Civil Engineer.]

Other facts will be stated as we proceed if necessary.

I. A full statement of the facts of the case was made for the purpose of passing on all the questions raised; but we have come to the conclusion that the tax bill in suit is invalid for the reason that installment tax bills should have been issued. Hence it seems best to leave undecided some of the propositions raised in order that other tax bills may be issued; the time for doing which, it has been stated, is brief. The questions not decided can be raised in an action, if any is brought, on the new tax bills.

But one or two matters other than that relating to the form of the bill ought to be determined, particularly the question of the constitutionality of the provisions of the city charter for laying out assessment districts: for if that part of the charter is void, no good tax bill could be issued under it.

Constitutionality.

The proposition is unsound that the scheme of assessment for grading streets prescribed in the charter is unconstitutional and void, in denying to property owners the equal protection of the law and depriving them of their property without due process of law. It is true the charter automatically determines the boundaries of the assessment district, or directs how it shall be determined, and city officials have no power to deviate from the charter method. In substance that method directs that where tracts of land to be taxed for improvements are divided into lots and blocks, the line of the taxation or benefit district shall extend back to the middle line of the block: and that where the tracts are not divided into lots or blocks, the line shall extend back one hundred and fifty feet from the near line of the street. But it does not follow that the scheme is bound to operate so unjustly in practice as to violate the constitutional rights of property owners, or so as to work injustice at all. If all the

blocks in the city were three hundred feet deep, the line of the assessment district would extend one hundred and fifty feet into the blocks, and the area included in the district would be the same whether the land was laid off into lots and blocks or not; and no one could know without proof, whether they are or not.

We are cited to the decision of the Supreme Court of the United States in Gast Realty & Investment Company v. Schneider Granite Company, 240 U. S. 55, as authority for the proposition that the charter of Kansas City in this particular is unconstitutional. That decision dealt with the charter of the City of St. Louis, which, in its terms, is much like that of Kansas City, except that the mode of assessing for the St. Louis improvement involved in the case, namely, the paving of a street, was partly by the frontage of the abutting properties and partly by the area. The assessment district as defined by an ordinance and according to the charter, took in four or five hundred feet in depth of the Gast Company's land; whereas other parcels, some on the same and some on the opposite side of the street, were assessed to a depth of 100, 150 or 240 feet. What the Supreme Court of the United States decided was not that the scheme of assessment provided by the St. Louis Charter was inherently in conflict with the National Constitution, but that the ordinance enacted pursuant to it and defining the assessment district under examination, worked out in such a mode as to deprive the Gast Company of its property without due process of law, and, therefore, was void as to said company and other property owners similarly discriminated against. So this court, in construing the scheme of the Kansas City Charter for taxing ground for the cost of grading a street, held, not that the charter scheme was void, but that the ordinance enacted under it in that case, operated so unequally by reason of the inequality of the assessed land included in and omitted from the benefit district, as to be unconstitutional against the defendant sued, because it deprived him of property

without due process of law. [Commerce Trust Co. v. Blakely, 274 Mo. 52.]

II. As regards the supposed omitted tracts that ought to have been included in the assessment district. we take up'first the tracts in the northwest corner of the assessment district, marked A, B, and C. Various documents were put in evidence to prove those tracts were not laid off in lots and blocks and should have been included in the district through 150 feet back from the west line of the street. Those parcels had been laid off in lots and blocks; but the documents in evidence are supposed to prove the streets had been vacated by the city in turning the ground into the public park known as Union Station Park, after it had been conveyed to the city by the Kansas City Terminal Railway Company, pursuant to a contract between the city and the railway company which bound the city to grade it. Of course, if the streets had been vacated when the benefit district was established, the land no longer lay in blocks; but the evidence does not prove the streets had been vacated as yet, or that proceedings to that end, prescribed by the charter, had been taken. The court below may have found the land still lay in lots and blocks, and there was evidence to support the finding.

Omitted Tracts.

But it is said, even if the streets were still open and the land divided into lots and blocks, as it was originally laid off, nevertheless the line of the benefit district should have been carried seventy-five feet from the west line of Main Street. But this would have been a violation of the charter requirement that the line should extend only to the middle of the block, if the block in this instance was only 76 feet in width, or thereabouts, as the evidence tended to prove. We see no reason to disturb the court's conclusion from the facts about those tracts.

The other parcels alleged to have been omitted from the taxation district, although they should have been included, are tracts marked D and E in Vineyard's Fourth Addition. The district there is thirty feet wide, and the

defendant contends it should have been run back that much further, because there is no street to the west of the Lots 1 and 56; therefore, the middle line of the block runs about twice as far to the west of Main Street as the assessment line runs. Evidence was put in to show a street running north and south immediately west of Lots 1 and 56, had been marked on the original plat of the addition and that said plat contained a recital of dedication to the public of all the streets and alleys marked on it. It seems the street to the west, if there was one, had not been used, or had been used but little; yet there was evidence to uphold the conclusion by the court below as trier of the facts, that there was a public street there. If so the assessment line properly was run in the middle of the block, between Main Street and said other street to the west. It appears said other street was twenty-five feet wide and was denominated Main Street on the plat of the addition, perhaps because the principal Main Street was not then recognized as a street or was expected to run into the other street. Whatever the reason may have been, the latter street was called Main Street on the plat where it was shown to be dedicated.

As the judgment in the present case must be reversed, we are not to be understood as determining finally that said omitted parcels were rightly left out of the district. What we mean to determine regarding them is that if they were laid off in lots and blocks, and if there was a street in Vineyard's Fourth Addition where the plaintiff contends and the evidence tends to prove one was, then and in such case the charter required the west line of the district to be run through the middle of the blocks. The effect of such a requirement on the validity of the tax bill; also the effect on it of the width of the lands included in the district on the east side of Main Street in comparison with the width of those on the west, and the further question of whether, under the charter or the general principles of the law, any inequalities and injustices in those matters, can be cor-

rected by abatement from the amount assessed against defendant's lot, are left undetermined.

The question, too, of the soundness of the rulings below, regarding the inclusion of the cost of the forced slides, is left open.

There is a provision in the city charter that reads like the determination of whether a tract has been laid off in lots or blocks, is left to the Council in doubtful cases, which determination is conclusive for all purposes. [Charter 1908, Art. VIII, sec. 3, p. 315.] Nothing has been said about the provision and we decide nothing as to its bearing on this assessment.

III.    The recommendation of the Board of Public Works for the grading and the ordinance authorizing the work, provided it should be paid for in tax bills to fall due in four equal annual installments.

It is pointed out that Ordinance No. 18683, which again authorized the grading, said nothing about installment tax bills, and that said ordinance controlled, as to the kind of bills to be issued, because it was the ordinance under which the work was done. Said ordinance merely provides that the work shall be paid for in special tax bills. It does not purport to repeal or modify the original ordinance (No. 16750) which provided for installment bills, and was as much authority for the grading as No. 18683; in truth, was the real authority, for it does not appear a second ordinance was needed, unless it was needed to validate the contract between the city and Spitcaufsky Brothers. The first ordinance remained in force, and determined the kind of bills which should be issued, in the absence of any repeal or amendment of its provision as to that matter. The work was bid for on those terms and the owners of lots which would be taxed to pay for it and who were allowed a hearing in advance, must have taken for granted payment would be in installment bills as the ordinance so declared, thereby according them a valuable privilege and one the charter authorized. Moreover, the rates of interest in the two

classes of bills were different, as were the dates from which the interest ran. The bills issued might be sued on at any time and had to be sued or within two years or they could not be collected; that is, the property owners were bound to pay the bills in any event within two years; whereas the installment bills would fall due annually through four years.

It is argued that defendant should have tendered one-fourth of the bill in suit at the end of the first year; and so on; that is to say, should have demanded the right to pay the bill issued against him in four installments. We are of the opinion that this argument does not meet the point pressed. The tax bill declared on as a cause of action was issued in violation of the ordinance for the work and of the charter; therefore, is invalid and is no basis for a cause of action against the defendant.

In this action at law no estoppel can be raised against the defense that the bill in suit is void for being contrary to the ordinance and charter in the matter of installments, time for suing on it, and rates and period of interest, merely because the defendant did not offer to pay one-fourth of the assessment against his property.

It is not to be understood that we hold the assessment void; for if time permits the proper bill may be issued. The judgment is reversed.

All concur, except *Woodson, J.*, absent.