City of Washington ex rel., Merrill F. Bihr, Respondent, v. John C. Mueller, Appellant.*

St. Louis Court of Appeals. Opinion filed September 21, 1926.

**1.—Special Tax Bills—Actions—Equity—Appellate Practice.** A suit for the collection of a special tax bill is a suit in equity and the usual rules pertaining to appellate practice in equity cases apply.

**2.—Same—Sewers—Ordinances—Advertisement for Bids—Contracts.** An ordinance providing for the construction of a sewer and for the letting of a contract therefor, directing the city clerk to advertise for bids and requiring that each bidder file with his bid a certified check in a stipulated sum as a guarantee that, if he should prove to be the successful bidder, he would enter into a written contract with the city for such work within ten days after the acceptance of his bid by the city council, the council reserving the right to reject any and all bids, shows that it was the intention of the city not to offer a contract, but to receive proposals for a contract, and hence a subsequent ordinance letting the contract to the successful bidder and its acceptance by him constituted the contract for the construction of the sewer.

**3.—Same—Same—Same—Same—Estimate of Cost—Construction.** The phrase "estimate of cost" used in a contract ordinance stating that the bid for construction of a sewer was at a price not exceeding the estimate of cost of the work, means the total actual cost of the work.

**4.—Same—Lump Sum Contract—Not Unit.** A sewer contract by a city specifying that the sewer was to be constructed for a certain definite, total

sum, and making no reference to individual items of labor and materials, which were referred to in the estimate of the city engineer and in the contractor's bid, **held** a lump sum contract, and not one based on unit prices.

**5.—Same—Reservations—Alterations—None Made—Effect.** A reservation in a sewer contract which reserved to the city engineer in the plans and specifications the right to make alterations in the plans, form or dimensions of the work, does not make the cost of the work, which was in excess of the total price stipulated for the work in the contract and in excess of the city engineer's estimate, within estimate of cost of the work, where there were no alterations in the plans or additions thereto made by the city engineer.

**6.—Same—Power to Make Alterations in Plans in Sewer Contract by City Engineer—Taxpayer Cannot be Charged with Cost of Additional Work Not Properly Authorized.** Under a sewer contract where the right was reserved to the city engineer in the plans and specifications to make alterations in the plans, form or dimensions of the work for sewer construction, a taxpayer cannot be charged with the cost of additional work which was not authorized by the city engineer, although the contractor found it convenient, or even necessary, so to do.

**7.—Municipal Corporations—Cities of Third Class—Powers of Council—Statutes.** Section 8305, Revised Statutes 1919, reenacted by Laws of 1921, p. 501, does not prohibit a provision in an ordinance by a city of the third class, that the city council shall not award a contract for a greater sum than the estimate of cost.

**8.—Same—Same—Same—Extent of Power Must Be Ascertained from Charter and Statutes.** The measure and extent of the powers to be exercised by a municipal corporation must be ascertained from its charter and the statutes relating to cities of its class, which is the source of all municipal powers.

**9.—Same—Same—Same—Express—Implied.** A municipal corporation receives its express powers from its charter, but from these, other powers are necessarily implied by inevitable inference from the very purpose of the corporation.

**10.—Same—Same—Same—Sewers—Contracts—Ordinances—Restricting Council to Estimate of Cost—Mandatory.** An ordinance prohibiting the city council from awarding a contract for sewer construction at a greater sum than the estimate of cost, not being prohibited by or inconsistent with section 8305, Revised Statutes 1919, re-enacted by the Laws of 1921, p. 501, authorizing a city of the third class to construct sewers, was within the power of the city council to adopt, and having been adopted, its provisions were mandatory, and the city council was required to comply with them.

**11.—Same—Restrictions Same as on Cities of Fourth Class.** An ordinance enacted by a city of the third class providing for sewer construction, but prohibiting the award of the contract in excess of the estimate of cost, not being a general ordinance but relating only to the construction of the one particular sewer, had the same force and effect as a statute containing the same provisions, and having been duly enacted, it was just as binding upon a city of the third class as is section 8506, Revised Statutes 1919, upon a city of the fourth class.

**12.—Special Tax Bills—Cities of Third Class—Ordinances—Prohibiting Award of Sewer Contract in Excess of Engineer's Estimate—Validity.** Under an ordinance by a city of the third class prohibiting the city council from awarding a contract for sewer construction in excess of a sum specified in the contract for sewer construction, tax bills, in so far as they are in an amount in excess of such specified sum, are invalid.

**13.—Same—Tax Bill Issued in Excess of Amount Authorized by Ordinance—Legal and Illegal Part Separable—Judgment for Amount Legally Due.** A tax bill issued for sewer construction for an amount in excess of the sum specified in the contract is not absolutely void, and where the evidence discloses data from which the illegal part of the tax bill can be separated from the legal, judgment should be rendered for the amount legally due.

**14.—Same—Interest—Allowable on Amount of Special Tax Bill Legally Due.** Interest on the amount of a tax bill that was due can be stopped only by tendering the amount that was legally due though the whole amount of the tax bill was not enforceable.

*Corpus Juris-Cyc. References: Municipal Corporations, 28Cyc, p. 273, n. 91; p. 274, n. 7, 10; p. 1033, n. 48 New; p. 1036, n. 88;. p. 1046, n. 16 New; p. 1155, n. 65 New; p. 1169, n. 77 New; p. 1197, n. 32; p. 1225, n. 59 New; p. 1226, n. 67; p. 1243, n. 89; Trial, 38Cyc, p. 1947, n. 57.

Appeal from the Circuit Court of St. Louis County.—Hon. G. A. Wurdeman, Judge.

REVERSED AND REMANDED (*with directions*).

*Irwin & Dunn* and *Ralph & Baxter* for appellants.

*Jesse H. Schaper* for respondent.

BENNICK, C.—This is a suit for the collection of a special tax bill issued by the city of Washington, a city of the third class, in favor of Merrill F. Bihr, relator, in the sum of $639.72, said amount being defendant's proportionate share of the cost of the construction of a sewer in Sanitary Sewer District Number 19 in said city. The case was taken on a change of venue from Franklin county to St. Louis county, where upon a trial the finding was in favor of the plaintiff and a judgment entered against defendant for the full amount of the tax bill, with interest, or for the total sum of $693.72. After an unavailing motion for a new trial, defendant has appealed.

The petition is in the usual form. In the answer, among other defenses, it is alleged that the tax bill is void by reason of the fact that the total amount of the tax bills issued against the property owners in the sewer district was in excess of the estimate made by the city engineer and the street commissioner, and in excess of the sum which relator contracted to accept for the construction of said sewer in accordance with the plans and specifications on file. The answer concludes with a prayer that said tax bill be canceled.

The reply is conventional.

It appears that a petition signed by sixteen resident property holders was filed with the city council on February 19, 1923, asking for the formation of Sanitary Sewer District Number 19 and the construction of a sewer therein. After some preliminary discussion, on

March 5, 1923, the city council adopted Ordinance No. 319, establishing the boundaries of said sewer district and defining the area which should be subject to special assessment. On March 17, 1923, there was filed with the city clerk by William Stoecker, the city engineer, the specifications for the construction of such sewer, both as to the materials to be used and the details of the construction. Section 6 of the general stipulations of such specifications contained the following provision:

"6. The City Engineer shall have the right to make alterations in the line grade, plans, form or dimensions of the work. If such alterations diminish the quantity of the work to be done, that shall not entitle the contractor to a claim for damages or for anticipated profits on the work dispensed with; if they increase the work, such increase shall be paid for according to the quantities done, and at the prices stipulated for such work actually done."

On March 19, 1923, Ordinance No. 320 was passed, providing for the construction of the sewer and for the letting of the contract for the work. Important excerpts from such ordinance are as follows:

"Section 2. For the purpose of doing said work the city clerk is hereby directed to advertise for bids for the letting of said work by contract. . . . Each bidder shall file with his bid a certified check in the sum of $25, guaranteeing if he is the successful bidder, he will enter into a written contract with the city for said work, within ten days after the acceptance of the bid by the council. . . ."

"Section 3. W. Stoecker, City Engineer, and the street commissioner, are hereby authorized and directed to prepare an estimate of the cost of said work, and file the same with the city clerk. The Council shall not award the contract for said work at a greater sum than such estimate, and the council reserves the right to reject any and all bids. The contract shall be let to the lowest and best bidder."

In compliance with this ordinance an estimate was prepared by the city engineer, giving the estimated amount of each item of labor and material together with the estimated prices thereof per unit and the total estimated price of each of said items, the total estimated cost being $7,634.32. While there is some conflict in the testimony regarding whether such estimate was filed with the city clerk, we take it that the recital in contract Ordinance No. 322 that it was filed is decisive of that question.

In response to advertisements in the newspapers, bids were received, among them being that of relator in the sum of $7,567.08, said bid being submitted March 31, 1923. This bid was prepared in the same general form as the estimate filed by the city engineer. On April 2, 1923, contract Ordinance No. 322 was adopted by the city council, letting the contract for the construction of the sewer to relator. Section 1 of this ordinance provided as follows:

"Section 1. Whereas, M. F. Bihr was the lowest and best bidder for the contract for constructing a sanitary sewer in sewer district No. 19, in the city of Washington, Missouri, at the price and sum of $7367.08, the said price not exceeding the estimate of the cost of said work heretofore filed in the city clerk's office by the street commissioner and city engineer, and which price is subject to such deductions as provided for by the specifications herein referred to. Now, therefore, the contract for said work is hereby let to the said M. F. Bihr for the considerations herein mentioned. The said contractor hereby binds himself . . . to furnish all labor and materials necessary to do said work, according to the plans and specifications for the same, prepared by the city engineer and street commissioner, and on file in the city clerk's office, and which said plans and specifications are made a part of this contract ordinance. . . ."

In his acceptance of the terms of the city as provided in the contract ordinance, relator agreed as follows:

"M. F. Bihr, to whom the contract for the work provided for in this ordinance contract has been let and awarded, hereby agrees to the terms of said ordinance contract, and agrees to furnish all labor and materials, and perform said work . . . for the price, in the manner and within the time provided in the foregoing ordinance contract, and the plans and specifications in said ordinance mentioned. . . ."

On October 13, 1924, the city engineer reported in writing to the mayor and city council that the sewer had been completed by relator in accordance with the contract and specifications, and that it had been tested and found to be in complete working order. At the same time the cost of the work was apportioned against the various tracts of land in the district, and the amount due from defendant, as the owner of a certain tract therein, declared to be $452.72. On October 15, 1923, the city council adopted Ordinance No. 348, accepting the above report of the city engineer and directing the issuance of tax bills in the total sum of $7367.08 against the various tracts of land in the sewer district.

The specifications filed by the city engineer had called for the excavation of 1842 cubic yards of solid rock, shale and other substances, such estimate having been made upon the assumption (not expressed in the specifications) that the trench would be two feet in width. In the actual construction of the sewer, however, relator removed 2435 cubic yards of the different materials due to his excavating the trench at a width of not less than three feet. It will be recalled that the specifications provided that the city engineer should have the right to make alterations in the plans, from, or dimensions of the work, and that, if such alterations should increase the work, such increase should be paid for according to the quantities done and at the prices stipulated for such work actually done. It appears, however,

that the additional excavation made by relator was not due to any change of the specifications on the part of the city engineer. In this connection we quote from relator's own testimony:

"Q. There was no alteration made in the original plans of this sewer construction? A. No, sir, not to the best of my knowledge.

"Q. No additions? A. No, sir.

"Q. No deductions? A. No, sir.

"Q. What instructions, if any did you get from the city engineer? A. None at all.

"Q. Did the engineer examine your work from time to time with reference to the width and depth of the ditch? A. Every day.

"Q. What did he say about the width of the ditch? A. He did not say anything about it."

In view of the increased excavation, relator refused to accept the sum of $7367.08, which was the amount of his bid, but instead made demand on the city for $10,410.43, the actual cost of the sewer, his theory being that his bid was on the basis of unit prices, and that the work under the contract required measurements by the city engineer in order to determine the final cost.

His demand being refused, relator instituted proceedings in the circuit court of Franklin county for a writ of mandamus directing the authorities of the city of Washington to cancel the tax bills which had been issued, and to issue in lieu thereof new and other special tax bills based upon the sum of $10,410.43 as the actual cost of the sewer. Upon the trial of this case relator prevailed.

Accordingly, on December 17, 1923, the city engineer made a second written report to the city council, reapportioning the cost against the various tracts of land on the basis of $10,410.43 as the actual cost of the sewer and assessing against defendant the sum of $639.72. On the same date Ordinance No. 356 was enacted, amending Ordinance No. 348, directing the cancellation of the former tax bills and adopting the sum of $10,410.43 as the cost for which the several landowners were to be proportionately assessed. New tax bills were issued, including the one against defendant, and thereafter the present suit was instituted.

Defendant contends that the court erred (1) in finding the issues in favor of plaintiff; (2) in finding that tax bills could lawfully be issued in excess of the total sum bid for the work, as provided in the contract ordinance and its acceptance, and (3) in holding that valid tax bills could be issued in the absence of an estimate made by the city engineer or street commissioner and duly filed with the city clerk. Our statement of the facts, which discloses that there was evidence (though contradicted) that such estimate was duly filed, is a sufficient answer to the third assignment. The first two assignments

raise the single question of the validity of the tax bill in suit. Plaintiff suggests that, inasmuch as no declarations of law were asked or given, the judgment must be affirmed, if there was substantial evidence to support it. However, this is a suit in equity (Bates v. Comstock Realty Company, 306 Mo. 312, 267 S. W. 641), and, accordingly, the usual rules pertaining to appellate practice in equity cases apply.

The principal objection urged by defendant in this court against the validity of the tax bill is that the cost of construction of the sewer, for which the tax bill in suit was issued in part payment, exceeded (1) the estimate of the cost of the work made by the city engineer and the street commissioner, and (2) the sum specified in contract Ordinance No. 322. In the consideration of this issue it will be borne in mind that tax bills were issued in the total amount of $10,410.43, that the city engineer had estimated the cost to be $7634.32, and that the amount of relator's bid was $7367.08.

In deciding the point urged by defendant, two questions must be considered: First, did the cost of the sewer exceed the estimate and the contract price; and, second, was it within the power of the city of Washington to provide by ordinance that the contract should not be awarded for a sum in excess of the estimate?

Addressing ourselves to the first of these questions, we are faced with the necessity of determining what constituted the contract in this case. Defendant takes the position that Ordinance No. 322 was the contract. Relator, relying upon the case of Platte City to use v. Paxton, 141 Mo. App. 175, 124 S. W. 531, contends that the ordinance authorizing the construction of the sewer, the specifications made for same, the notice to contractors for the letting of the contract, the relator's bid, and the ordinance accepting same constituted the written contract between the city and relator as a matter of law. We have no fault to find with the Platte City case, because there (loc. cit. 179) "no written contract was executed by the parties, the ordinance, bid and acceptance by motion being treated as the contract." But, in the case at bar, as clearly distinguished from the facts in the Platte City case, we have the adoption by the city council of the contract ordinance and its acceptance in writing by relator, which facts seem to be decisive of the question unless, as strenuously urged by relator, Contract Ordinance No. 322 was invalid except insofar as it was an acceptance by the city of relator's bid. In this connection we concede that a binding obligation can under certain conditions originate in a notice addressed to the general public, the effect to be given such a notice, however, depending entirely upon the intent manifested by its terms. A notice to contractors for the letting of a contract may be so worded as to require but an acceptance

to constitute an enforceable legal agreement. On the other hand, the proposal may be nothing more than an invitation to others to negotiate.

To ascertain the intention of the parties in the case at bar, we refer to Ordinance No. 320, providing for the construction of the sewer and for the letting of the contract, and observe that it directed the city clerk to advertise for bids and required that each bidder file with his bid a certified check in a stipulated sum as a guarantee that, if he should prove to be the successful bidder, *he would enter into a written contract with the city for said work within ten days after the acceptance of his bid by the city council.* Furthermore, the council reserved the right *to reject any and all bids.* This identical provision was incorporated in the notice to contractors. The above language demonstrates conclusively that it was the intention of the city, not to offer a contract, but to offer to receive proposals· for a contract. [Anderson v. Public Schools, 122 Mo. 61, 27 S. W. 610.] Accordingly we unhesitatingly rule (as defendant contends) that Ordinance No. 322 was the contract in this case. Of course, the plans and specifications were made a part of the contract by the express terms of the ordinance itself.

The validity of the tax bills, therefore, must be determined by the construction to be placed upon the contract. Defendant contends that the contract provided that the sewer was to be constructed by relator for the lump sum of $7,367.08, said price not exceeding the estimate of the cost of said work prepared by the city engineer. Relator argues that the contract for the work was based on unit prices, instead of a lump sum, and that the sum of $10,410.43 does not exceed the unit prices either of the contract or of the estimate, which was also based on unit prices.

The contract ordinance expressly stated that relator's bid was ''at the price and sum of $7,367.08, the said price not exceeding the estimate of the cost of said work heretofore filed in the city clerk's office by the street commissioner and city engineer.'' The phrase ''estimate of the cost'' has been well defined to be an estimate of the total actual cost of the work. [Williams v. Hybskmann (Mo.), 278 S. W. 377.] We know of· no reason why this definition should not apply to the term when used in an ordinance as well as when expressed in a statute.

Relator suggests, however, that both in the city engineer's estimate and in relator's bid the estimated cost of each item of labor and material was given. While this is true, the total estimated cost was also stated in each instance. We are mindful, too, that the contract itself made no reference to the specific items of labor and materials. In these respects, therefore, the instant case is clearly distinguishable from the cases of Gratz v. City of Kirkwood, 182 Mo. App. 581, 166 S. W. 319, and Stover v. City of Springfield, 167 Mo.

App. 328, 152 S. W. 122, relied on by relator. In the Gratz case (loc. cit. 594.) no total or lump sum was stated, nor did the city in accepting the contract specify any total amount for which the work was to be done. In the Stover case (loc. cit. 335) the contract specified the several items of labor and materials and set a price against each which differed from the corresponding estimate of the city engineer. That the contract in the case at bar, specifying that the sewer was to be constructed for a certain definite, total sum, and making no reference to individual items of labor and materials, was a lump sum contract, and not one based on unit prices, we think, therefore, may not be successfully controverted.

The construction to be placed on such a contract was aptly stated in the case of Gratz v. Wycoff, 165 Mo. App. 196, 145 S. W. 870, wherein Judge REYNOLDS on pages 207-208 said:

"This contract was not let on items but as a whole; the bid was taken as a whole; the contract was made as a whole. The prices were of no concern to the property holders whose property was to be assessed for this improvement. What they were concerned with was the total. A very different proposition would be presented if the several classes of work, for instance the earth excavation, the loose rock excavation and the rock in place, were to have been let out under separate contracts. But that was not the case here. The estimate was in gross. The particulars and details were of service only as specifications of the particular work to be done; accomplishing that, they pass out of consideration for all practical purposes, the total price not exceeding the total estimate."

We are not unmindful of plaintiff's suggestion that the right was reserved to the city engineer in the plans and specifications to make alterations in the plans, form, or dimensions of the work. If such alterations should be made by such officer and the work should be increased thereby, such increase was to be paid for according to the quantities done and at the prices stipulated for such work actually done. Had the evidence disclosed that the increase in the work, which brought the price therefor up to the sum of $10,410.43, was the result of changes in the plans made by the city engineer, the excesses demanded by relator above the total lump sum specified in the contract would have been justified thereby; but, inasmuch as relator's own testimony shows that there were no alterations in the plans or additions thereto, and that no instructions with reference to the width of the ditch were given by the city engineer, this provision of the plans and specifications furnishes no support for relator's contentions, and defendant may not be charged with the cost of additional work which relator found it convenient, or even necessary, to do.

But, even though the amount for which the tax bills were issued exceeds both the city engineer's estimated cost and the lump sum specified in the contract, are the tax bills for such reason invalid? It is conceded that Washington is a city of the third class, and that there is no statute applying to the construction of sewers in cities of the third class such as section 8506, Revised Statutes 1919, which applies to cities of the fourth class, and provides that no contract shall be entered into for such work at a price exceeding the city engineer's estimate. While it is true that there is no statute limiting the power of the city in such respect, Ordinance No. 320 was adopted, directing the city engineer to prepare an estimate, and expressly providing: "The Council shall not award the contract for said work at a greater sum than such estimate." If it was within the power of the city council to enact this provision, it seems that it would logically follow that the tax bills issued in excess of such estimate would be invalid to the extent of such excess. How does such provision of this ordinance affect the case?

Relator, relying upon a decision of the Springfield Court of Appeals, Webb City ex rel. v. Aylor, 163 Mo. App. 155, 147 S. W. 214, contends that the provision of the ordinance, directing the council not to award the contract for the work for a sum in excess of the estimate, in nowise affects the validity of the tax bills, even though the actual cost exceeds the estimated cost, for the reason that such provision of the ordinance is inconsistent with and is a limitation upon the power and jurisdiction of the council under its charter, and never was binding on the council. The Webb City case does hold that, where the statute itself designates the powers of a city council and prescribes the conditions under which those powers may be exercised, the council is powerless to add to or detract from those provisions. But we do not think that Ordinance No. 320 either added to or detracted from the provisions of the statutes governing cities of the third class. Section 8305, Revised Statutes 1919, as re-enacted, Laws 1921, p. 501, provides for the construction of sewers in cities of the third class, but such section does not prohibit a provision in an ordinance that the city council shall not award a contract for a greater sum than the estimate.

Assuredly the measure and extent of the powers to be exercised by a municipal corporation must be ascertained from its charter—in this case the statutes relating to cities of the third class—which is the source of all municipal powers. From its charter a municipality receives express powers, but from these, other powers are necessarily implied by inevitable inference from the very purposes of the corporation. It has been held that, even though the statutory provisions relating to a city of a certain class do not place a limitation upon

the powers of the city council in respect to the construction of public improvements, yet, if there is no statutory prohibition with reference thereto, it is within the sound discretion of the city authorties, to whom the Legislature has delegated the general power of making such improvements, to enact any ordinance in connection therewith that may seem expedient, providing such ordinance is not contrary to or inconsistent with the statutes. [Thrasher v. City of Kirksville (Mo.), 204 S. W. 804, and cases cited; City of Webster Groves to use ˙v. Reber (Mo. App.), 212 S. W. 38.] It follows, therefore, that, inasmuch as Ordinance No. 320 was not prohibited by or inconsistent with the statute authorizing a city of the third class to construct sewers, it was within the power of the city council to adopt it, and, having been adopted, its provisions were mandatory and the city council was required to comply with them.

Accordingly, Ordinance No. 320, which was not a general ordinance but related only to the construction of the one particular sewer, had the same force and effect as a statute containing the same provisions, and, having been duly enacted, it was just as binding upon the city of Washington as is section 8506, Revised Statutes 1919, upon a city of the fourth class. Such being the case, the city council of the city of Washington, even had it so desired, would have had no authority to let the contract for a sum in excess of the city engineer's estimate of the total cost. [Williams v. Hybskmann, *supra.*]

From what we have said it necessarily follows that the tax bills in the total sum of $10,410.43 must be held invalid insofar as they are for an amount in excess of the sum specified in the contract. Seeking to avoid this conclusion, relator relies upon a line of cases (Heman Const. Co. v. Lyon, 277 Mo. 628, 642, 211 S. W. 68; Probert v. Garth, 155 Mo. App. 387, 137 S. W. 320; Kelley v. Morton, 179 Mo. App. 296, 166 S. W. 840) which hold that, when the city charter does not restrict the cost of the work to the sum estimated, the fact that the work exceeds the estimate will not invalidate the tax bills. These cases correctly declare the general rule of law, but, having held that it was within the power of the city council to adopt Ordinance No. 320, such authorities cannot be controlling in the case at bar.

Defendant's proportionate share of the cost of the construction of the sewer at the price and sum of $7367.08 specified in the contract ordinance is $452.72. It does not follow, however, that the tax bill issued against him for $639.72 is absolutely void. Whenever the evidence dicloses *data* (as here) from which the illegal part of the tax bill can be separated from the legal, judgment should be rendered for the amount legally due. [Neil v. Ridge, 220 Mo. 233, 119 S. W. 619; Haag v. Ward, 186 Mo. 325, 85 S. W. 391; Neenan

v. Smith, 60 Mo. 292; Commerce Trust Company v. Keck, 283 Mo. 209, 223 S. W. 1057; City of St. Joseph v. Dillon, 61 Mo. App. 317; City of Joplin v. Freeman, 125 Mo. App. 717, 103 S. W. 130; Reinert Bros. Const. Co. v. Whitmer (Mo. App.), 206 S. W. 387; Murphy v. Welton, Mo. App. 217 S. W. 620; City of Webster Groves v. Reber (Mo. App.), 226 S. W. 77.]

The tax bill in suit provided that it should be payable thirty days after its issuance, and, if not paid within that time, should bear interest at the rate of six per cent per annum until paid. While the whole amount of the tax bill was not enforceable, yet the interest on the amount that was due could have been stopped only by tendering the amount that was legally due. [Neenan v. Smith, and Neil v. Ridge, supra.]

Accordingly the Commissioner recommends that the judgment of the circuit court be reversed, and the cause remanded, with directions to enter judgment for plaintiff and against defendant in the sum of $452.72, together with interest at six per cent per annum from thirty days after the date of the tax bill to the date of the judgment so entered. [Murphy v. Welton, supra.]

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly reversed and remanded with directions. *Daues, P. J.,* and *Becker* and *Nipper, JJ.,* concur.