**SAMUEL KRAUS COMPANY, a Corporation, Plaintiff-Appellant,**

**v.**

**KANSAS CITY, Missouri, a Municipal Corporation, Defendant-Appellant.**

No. 46018.

Supreme Court of Missouri,

Division No. 2.

July 14, 1958.

Motion for Rehearing or to Transfer to Court en Banc Denied Sept. 8, 1958.

Benj. M. Powers, City Counselor, John J. Cosgrove, Herbert C. Hoffman, Associate City Counselors, Robert A. Meyers, Asst. City Counselor, Kansas City, for defendant-appellant.

Clay C. Rogers, Charles L. Carr, James W. Benjamin, Robert S. Burns, Kansas City, for plaintiff-respondent (appellant), Thompson, Mitchell, Thompson & Douglas, St. Louis, of counsel.

BARRETT, Commissioner.

Upon these assigned claims (Samuel Kraus and Alma Kraus doing business as Samuel Kraus Company to Samuel Kraus Company) relating to or arising out of a contract with Kansas City a jury returned a verdict in favor of the plaintiff on count two of its claim in the sum of $265,508.22, the principal sum of $191,013.22 and $74,-495 interest, and the city has appealed from the judgment entered upon the verdict. At the conclusion of the evidence the trial court sustained the city's motion to dismiss count one of the claim and the plaintiff, Kraus Company, has appealed from the judgment entered upon the motion.

In December 1947, Kraus, a general contractor with more than thirty years' experience, was the successful bidder on a contract to construct a water main from the city's Turkey Creek pumping station at 23rd and Allen Streets to a reservoir at 75th and Holmes Streets. The contract provided for a water main 39,473.73 feet in length, in excess of seven miles, of 48, 42 and 36 inch concrete pipe which the city purchased and furnished under a separate contract with the Lock Joint Pipe Company. In general, Kraus was to excavate the trench or ditch, lay the pipe, and refill the trench. Kraus completed the contract in August 1949. His total or lump sum bid to construct the water main was $1,423,-956.87. The parties do not agree as to the precise figures but according to Kraus he has been paid $1,313,000.94, $1,228,691.15 on the contract price and other sums not necessary to be enumerated here, leaving the claimed balance of $191,013.22. The proposal and contract, consisting of 134 pages which Kraus calls "the book," in addition to providing for the lump sum bid and figure of $1,423,956.87, provided for unit price bids on a list of estimated items, "List Of Variable Quantities," furnished by the city's engineer. These items were unclassified excavation, excavation of solid rock, excavation of paving, three classes of concrete, bituminous paving, reinforcing steel and jacket pipe. Given the length of the ditch and other necessary data it was possible to rather accurately compute the total amount of all material to be excavated, nevertheless, certain of these estimated items "underran" the estimates and there was not as much solid rock and paving to excavate as estimated, $191,013.22 worth, consequently the city deducted those items from the lump sum bid and paid the contractor for the actual work done in excavating the ditch. It is this sum and for these items, the "underruns" of solid rock, paving and other material, that the plaintiff sought recovery on the first count of the petition which, in brief, is simply an

action for damages for breach of the contract.

■ The theory of the action on this count is that the contract is a lump sum contract and the plaintiff having performed the contract the city is obligated in any and all events to pay the stipulated lump sum price of $1,423,956.87. Whether he is so entitled to recover or whether the court properly sustained the motion to dismiss count one hinges on the interpretation to be placed upon Article II of the contract:

"That the City will pay the Contractor for the performance of this contract and that the Contractor will accept in full compensation therefor *(except as adjustments are made in quantities at the unit prices given in the proposal* And *as a result of additional, omitted, or changed work)* the sum of * * * ($1,423,956.87) * * * with payments made in the manner prescribed in the specifications."

Specifically this phase of the case turns upon the meaning of the parenthetical clause in which the italics have been supplied and, after the manner of Kraus, the word "and" has been capitalized, because that is the crux of his claim. It is his contention, in short, that the contract is a lump sum contract "subject only to adjustment for requested and authorized additional, omitted or changed work," or, to state the matter another way, that the contract was not subject to adjustment in accordance with the "underrun" estimates and unit prices for work actually done,— meaning that the city had no right to deduct the sum of $191,013.22 for work he did not in point of fact do, that is, remove the estimated quantities of solid rock, pavement and other materials, because they were not there.

To substantiate this construction of the contract Kraus seizes upon the word "and" in the parenthetical clause and invokes the conjunctive-disjunctive rules employed in the submission of tort cases and says, by reason of these rules, "the exception requires conjunctively that both conditions exist to authorize a variation from the lump sum contract price." The word "and" is defined and cases are cited to demonstrate that the word may not be changed or construed to mean "or," and therefore it is urged, before there could be any adjustment in the lump sum price or before the unit prices for estimated quantities became effective or into operation, they must have come about only as the result of additional, omitted or changed work as elsewhere defined and set forth in the contract. It is said that the contract is ambiguous and in support of the plaintiff's interpretation the auxiliary rules of construction are invoked (Paisley v. Lucas, 346 Mo. 827, 143 S.W.2d 262) and extrinsic evidence is resorted to and, finally, it is urged that the proof, particularly certain documentary evidence, is so plain as to admit of no doubt and established the plaintiff's right to recover on count one as a matter of law.

In considering this count and the case in its entirety, for that matter, it may be interpolated that it is not necessary to precisely detail and examine every one of the plaintiff's numerous arguments in support of its basic claims, neither is it necessary to set out fully a resumé of the five volumes of record and more than eighty exhibits, it is sufficient to specifically consider so much of these materials as is necessary to illustrate and demonstrate, and to say that they have all been painstakingly examined and considered in the disposition of this appeal.

In the first place, only Kraus claims that "and" must be and cannot be changed to "or," or that there is any ambiguity in the parenthetical clause. The sentence reads and plainly means that the city will pay and the contractor will accept in full compensation $1,423,956.87 "except as adjustments are made in quantities at the unit prices given in the proposal and as a result of additional, omitted, or changed work"; the word "and" deals with two

separate and distinct matters even though they may be related in some respects. In short, the lump sum price was subject to adjustment by reason of variations in the "list of variable quantities" at their respective bid prices; as to those items the contract fairly provided and the parties plainly intended that the contractor's compensation and the city's obligation would be the unit prices for the precise amount of work actually necessary and done with respect to those items apt to vary in a construction project of this type, a water main more than seven miles long through a large section of Kansas City.

Other provisions of the contract support this interpretation. To illustrate, one provision of the contract documents sets out "the list of quantities," by the four sections of the work to be done and the four combined, and says that "Bidders shall bid a lump sum for each section or combination of sections of this contract as provided in the Proposal, *but lump sums shall be adjusted in final settlement by the amount that actual quantities of these items differ from the following indicated amounts and at the unit prices stated in the Proposal.*" At another point, as to payment, the contract says, "Adjustments may be made in the lump sum bid for variations in certain items at the unit prices named in the Proposal. *All other variations must be made as provided under Article FC-20, 'Additional, Omitted, or Changed Work,'*" the latter provision plainly indicating that changed, omitted, or additional work are distinct matters to be dealt with separately from adjustments in "quantities at the unit prices." A provision as to "Payment For Excavation" says, "All excavation shall be divided into three classes *for the purpose of measurement of actual quantities for the adjustment of the contract price.*" As to payment for removing and replacing pavement (one of the variables) the contract recites, "If the actual amount of pavement removed and replaced shall exceed that given in the 'List Of Quantities', the Contract Price shall be increased in an amount

equal to the actual quantity minus the quantity given times the unit price stated in the Proposal. *If the actual amount of pavement removed and replaced shall be less than that given in the list of quantities, the Contract Price shall be reduced by an amount equal to the difference in quantities times the Unit Price given in the Proposal."* (Throughout all quotations italics supplied.) There are other relevant provisions but again it is not necessary to set them out and demonstrate or analyze, —the noted illustrations are sufficient to demonstrate that the contract stated in as many ways as it could be repeatedly stated that as to those necessarily variable items the lump sum price was finally subject to adjustment and pay for what was actually encountered and in point of fact excavated.

If, as Kraus urges, resort is to be had to the auxiliary rules and extrinsic circumstances, including the conduct of the parties and their practical construction of the contract, they likewise repel the inference and claim that the lump sum price was not subject to adjustment. Attached to his brief is his exhibit 4, the twentieth and final estimate prepared by the city which he rejected. That document, however, like a large number of its nineteen predecessors, listed thirty-four "change orders," specifying what they were for and the amounts to be paid for each item and, as we understand, they were paid for and were handled under the separate provision, previously noted, governing "Additional, Omitted Or Changed Work." Also, there is set forth on this document ten "List Of Quantities"; the contract or estimated quantities are set out, then the actual quantities, the differences in the two lists, plus or minus, the unit prices, and under "Lump Sum Adjustment" there were additions where the quantities were plus and deductions if they were minus. As indicated, the plaintiff rejected this final estimate but on it were four plus items ("overruns"), 102 cubic yards of Class A concrete, 16,930 pounds of reinforcing steel, three feet of 60 inch jacket pipe and 2,936 tons of bituminous pav-

ing and for all of these items the city paid and Kraus accepted the sum of $59,020. If the conduct of the parties is to be invoked as bearing upon the meaning of the contract it is difficult to reconcile Kraus' conduct with respect to the "overruns" and his claim that the parties interpreted the contract as one for a lump sum only when there were "underruns." McFarland v. Gillioz, 327 Mo. 690, 37 S.W.2d 911.

Again, it is not necessary to detail every fact and circumstance and analyze and discriminate, what we have set forth is sufficient to illustrate that the contract was indeed one for a fixed or lump sum price but the lump sum price was subject to adjustment at the bid unit prices for the work actually done in so far as it concerned these variable items. Webb-Boone Paving Co. v. State Highway Commission, 351 Mo. 922, 173 S.W.2d 580; United Construction Co. v. City of St. Louis, 334 Mo. 1006, 69 S.W. 2d 639; Sager v. State Highway Commission, 349 Mo. 341, 160 S.W.2d 757. It is in this important respect that City of Washington ex rel. Bihr v. Mueller, 220 Mo.App. 564, 287 S.W. 856, 859, differs from the contract involved here. In that case, a suit on a special tax bill, the court said, "That the contract in the case at bar, specifying that the sewer was to be constructed for a certain definite, total sum, *and making no reference to individual items of labor and materials,* was a lump sum contract, and not one based on unit prices * * * may not be successfully controverted." The city literally complied with the contract and paid Kraus the specified lump sum precisely adjusted by the sums due for work actually done with respect to the variable items and the court properly dismissed count one of his claim.

█ The second count, upon which the plaintiff has obtained a verdict of $265,508.22, is likewise concerned with the list of estimated variable quantities in so far as they were "underruns," not "overruns," and particularly as they were set forth and estimated in the combined sections I, II, III and IV of the contract documents. In those documents the city's engineers estimated, among the ten listed items, the unclassified excavation at 78,600 cubic yards, solid rock excavation 12,460 cubic yards, paving excavation 7,510 cubic yards and reinforcing steel at 158,800 pounds. Four days before bids were to be received the city's engineers issued an "addendum" to the contract documents and revised upward their estimates as to three of these items but no others; the solid rock from 12,460 to 14,000 cubic yards, Class A concrete from 1,480 to 1,600 cubic yards and reinforcing steel from 158,800 to 255,000 pounds. As previously noted certain of these estimated quantities were erroneous; the unclassified excavation underran the estimates 7,432 cubic yards, the solid rock 6,580 cubic yards, the concrete paving 1,550 cubic yards and the reinforcing steel 16,930 pounds. The theory of the plaintiff's right to recover on count two is that the estimated quantities were warranties upon which he had a right to and did rely and accordingly based his lump sum bid and unit prices and the noted estimated quantities being in error a total of 15.54%, he was entitled to recover damages for this breach of the warranties.

Incidentally, in connection with both counts, Kraus offered to explicitly prove, by exhibits compiled for the purpose, that if he was entitled to recover on count one he should receive $191,013.22 plus $74,495 interest, a total of $265,508.22, but if recovery was had on count two he should receive the principal sum of $172,285.04 plus $67,191.17 interest, a total of $239,476.21. Nevertheless, the plaintiff submitted and the jury returned a verdict for the larger sum, $265,508.22, which Kraus now says is just if not immaterial.

Other than as indicated it is not necessary to a disposition of this appeal to analyze, pin point, and reconcile the precise nature of the plaintiff's claim on this count. In the trial of the case his counsel freely used the word "fraud" (Annotation 166 A.L.R. 938), but in the principal instruction he hypothesized, in substance, that the city intended that bidders should rely upon the

quantities of rock, unclassified material, paving and steel set out and estimated in the proposal, that he did rely on the stated quantities, that the stated quantities were 15.54% in excess of the quantities actually excavated, that plaintiff was misled by the estimated quantities, was damaged and therefore was entitled to recover $191,-013.22 plus interest. What we have said with respect to count one may in large measure be sufficient to dispose of the claim on count two. Since the subject of variable items was specifically provided for and covered in the contract it is doubtful that there could be any implied warranties governing the same subject matter. Webb-Boone Paving Co. v. State Highway Commission, supra; Cameron, Joyce & Co. v. State Highway Commission, 350 Mo. 389, 166 S.W.2d 458; Sandy Hites Co. v. State Highway Commission, 347 Mo. 954, 149 S.W.2d 828. The statement in Spitcaufsky v. State Highway Commission, 349 Mo. 117, 124, 159 S.W.2d 647, 652, that "there was an _implied_ covenant in the construction contract, that the Commission would not delay the completion and increase the cost of the project by arbitrary and capricious changes in the plans and specifications after the work began, then that covenant was as much a part of the contract as if it had been written in it" was not intended to and did not announce another or different rule.

It is not necessary to say whether there is a so-called "federal rule" and whether this jurisdiction has adopted a contrary rule. For the purposes of this opinion it is assumed with respect to the estimated quantities that the applicable rule is as now apparently contended by Kraus in his brief: "The general rule may be deduced from the decisions that where plans or specifications lead a public contractor reasonably to believe that conditions indicated therein exist, and may be relied upon in making his bid, he will be entitled to compensation for extra work or expense made necessary by conditions being other than as so represented." Annotations 76 A.L.R. 268, 269; 16 A.L.R. 1131; 24 Cornell L.Q. 109; 43

Am.Jur., Secs. 105, 111, pp. 845, 852. These annotations and notes cite, among others, the cases relied upon by Kraus: United States v. Atlantic Dredging Co., 253 U.S. 1, 40 S.Ct. 423, 64 L.Ed. 735; United States v. Spearin, 248 U.S. 132, 39 S.Ct. 59, 63 L.Ed. 166; Christie v. United States, 237 U.S. 234, 35 S.Ct. 565, 59 L.Ed. 933; Hollerbach v. United States, 233 U.S. 165, 34 S.Ct. 553, 58 L.Ed. 898 and Salt Lake City v. Smith, 8 Cir., 104 F. 457. But these cases as well as the cases cited in connection with count one are not precisely in point or comparable in either fact or theory with this case and diligent search has not uncovered a similar instance. This is the first and only attempt to recover damages for "underruns," on any theory, work the contractor did not in point of fact perform. Again to illustrate, this time by contrast with the cases relied on by Kraus, in Salt Lake City v. Smith, 104 F. 457, a contract for the construction of a water conduit, the engineers had estimated 10 cubic yards of cut stone at $12.40 per cubic yard. Instead of there being and the contractor removing 10 cubic yards of stone he removed 865.44 cubic yards and for this extra and different work, resulting in part from changes so extensive as not have been contemplated by the contract and costing more than double the contract price to perform, the contractor was permitted to recover the fair and reasonable sum of $30 a cubic yard for, as stated in the quoted rule, the "extra work or expense made necessary by conditions being other than as so represented." Annotation 76 A.L.R. loc. cit. 269. In United States v. Atlantic Dredging Co., supra, after the contractor had embarked upon his dredging contract in reliance on the engineers' test borings that the material to be encountered was mud and sand and he encountered extensive "impenetrable material" it was held that he could stop performance and recover the difference between the cost of excavation actually done and the amount received under the contract. In United States v. Spearin, supra, a contractor agreed, for a lump sum, to build a dry dock. In con-

structing the dock it was necessary to move and reconstruct an intersecting sewer. The contractor reconstructed the sewer but unknown to either party a dam in a connecting sewer damaged and endangered the entire enterprise. The contractor refused to proceed unless the government assumed any damage from the offending dam. The government annulled the contract. It was held that the contract documents imported a warranty as to the adequacy of the specified sewer and that the contractor could recover all damages resulting from the breach which included his expenditures and the profits he would have earned had he been permitted to perform his contract. In short, in all of these cases, as the mere statement of the rule implies, there was a recovery of compensation for extra work made necessary by conditions being other than as represented. In none of the cases was there a contract with provisions similar to the ones involved here,—a lump sum contract adjustable by unit prices for listed variables—and in none of them was there an attempt to recover on a warranty because the estimated quantities were not there, resulting only in the contractor's being deprived of the opportunity to do more or more difficult and expensive work.

In the lump sum bid Kraus added 10% for overhead and expense and 10% for profit. Nevertheless, Kraus and his counsel repeatedly stated that he lost money on the contract. But the statements were mere unsupported conclusions; Mr. Kraus did not say how much he had lost or how he had lost it. His engineer attempted to support the claim of general loss on the contract by stating that by reason of the underruns crews were maintained at so much per day, there was equipment rental and equipment maintained, and, had the estimated quantities been there, the crews and machinery would have been in use on the more difficult and extensive work. But these statements, like those that Kraus lost money, are also illusory, unsupported estimates and conclusions. Even in this mass of doc-

umentary evidence there was not the slightest proof that Kraus was obligated to pay and maintain the crews employed on this particular job in Kansas City regardless of whether there was work for them to do. There was no proof that any particular equipment had been rented from any particular individual and if so the terms of the rental or the cost of maintaining the equipment. In any event, as indicated, all these conclusions as to these nebulous losses were based on the "underruns."

As a matter of fact the major dispute between the contractor and the city was as to the proper classification of the material actually excavated; that is, whether the material was unclassified or whether it was rock. The plaintiff's witnesses, engineers, went over the entire route, section by section and station to station, and finally claimed that the city had classified a total of 2,179 yards of material as unclassified excavation, for which the unit price was $6.16 a cubic yard, when in fact the excavated material was and should have been classified as solid rock and paid for at the unit price of $16.44 a cubic yard. But obviously, whatever the merits of this particular controversy, all this does not concern or establish any implied warranty or any loss resulting from the breach of the claimed warranty that the engineers' estimates were in error as to the amount of certain materials to be excavated. The warranty claimed to have been breached was not as to the proper classification of the material actually excavated, it was as to the estimated quantities that were not in point of fact there. Admittedly, more than seven miles of ditch was excavated and regardless of the proper classification of the material removed there is no claim that any warranty as to the total amount of work to be done was breached or that the work in excavating a ditch 39,473.-73 feet in length was not paid for.

█ In this immediate connection there was one other item the plaintiff relied on as establishing a breach of warranty and a loss of $66,310.25 and that was the cost of lay-

ing the concrete pipe. The plaintiff claimed and his engineers testified that they had figured and included the cost of laying the pipe, and the necessarily attendant work in connection with it, in the bid unit prices for the variable items of excavating the unclassified material, the pavement, and the solid rock; hence, as they claimed, had there been as much solid rock as estimated the contractor would have been paid the unit price for excavating rock, $16.44 a cubic yard instead of the $6.16 paid for laying the pipe in the unclassified material There was evidence that it was the custom and usage of the industry to so bid the cost of pipe laying instead of including that item in the lump sum bid. Again, it is not necessary to detail all the facts and circumstances and examine the relevant documents. The short answer to this phase of the claim, the custom and practice of the industry notwithstanding, is that the contract plainly and repeatedly set forth the variable list of quantities upon which unit prices were to be bid and they do not list or even hint at so large and important an item as pipe laying. And, there is a sound reason for the pipe laying not being so listed and, as plaintiff claims by this indirect method, being warranted. Irrespective of the type of ditch or material in which it was to be laid, the water main of specified size was 39,473.73 feet in length and the amount of pipe to be laid was not a variable item. If the plaintiff voluntarily elected to include that item, for reasons of his own or because of custom, in the variables and hazard whether the excavation was to be through and the pipe laid in unclassified material or solid rock the risk was of his own choosing; it certainly does not establish a warranty, express or implied, or its breach. There was no estimate as to that particular item, the length of the pipe was fixed and exact, 39,-473.73 feet.

In conclusion we repeat, all the evidence and all the supporting subsidiary arguments have not been set forth and examined in detail, to do so would produce a ponderous tome. The essential, basic facts and cir-

cumstances are set forth and the illustrations demonstrate for the reasons indicated, whatever the general rule as to warranties in public contracts as to estimated quantities, that the invoked warranty does not extend to and apply to this claim and its particular facts and circumstances or to the alleged losses described in this record.

Accordingly, the judgment dismissing count one is affirmed and the judgment for plaintiff on count two is reversed.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.